SUCESIÓN GONZÁLEZ, DEMANDANTE Y APELADA, *v.* ROQUE GONZÁLEZ & CÍA., SUCS., S. EN C., DEMANDADOS Y APELANTES.

ALVAREZ ET AL., DEMANDANTES Y APELANTES, *v.* PORTELA ET AL., DEMANDADOS Y APELADOS.

Nos. 2767 y 2768.—*Visto:* Mayo 19, 1924. *Resuelto:* Julio 23, 1924.

SOCIEDADES EN COMANDITA—*Injunction* PARA PROHIBIR EL USO DE CIERTO NOMBRE EN LA RAZÓN SOCIAL—*Good Will*—PRUEBA.—La viuda y la hija de Roque González, socios comanditarios de "Sucesión de Roque González, S. en C.," comerciantes en mercancías secas, dedujeron demanda de *injunction* contra "Roque González y Co., Sucesores," también comerciantes en mercancías secas, para que se abstuvieran de usar el nombre de Roque González en la razón social de la demandada, de la cual formaron parte anteriormente las demandantes como comanditarias, alegando que tal nombre les pertenece exclusivamente y alegando perjuicios por la usurpación. *Se resolvió:* que aparte de que ambas sociedades estaban infringiendo el artículo 147 del Código de Comercio porque muerto Roque González a la fecha en que ambas se constituyeron su nombre no debía figurar en la razón social de ninguna de ellas, demostrando la prueba que al vencimiento del término de la primitiva sociedad en comandita "Roque González & Co., Sucesores," las demandantes, que eran socios de la misma, vendieron su interés en la mercantil a dos de los gestores, quienes quedaron, según el contrato de venta, "como únicos interesados en los bienes, acciones y derechos y en la liquidación," retirándose las vendedoras "de toda participación e interés" en los bienes, es preciso concluir que el buen nombre *(good will)* de "Roque González & Co., Sucesores," era uno de los bienes que fueron objeto de la enajenación por parte de las vendedoras, quienes, por tanto, nada pueden reclamar, tanto más cuanto que no se ha demostrado la existencia de perjuicio.

ID.—ID.—PERJUICIO.—No demostrándose la existencia de un verdadero perjuicio, ni una competencia injusta en los negocios, no cabe expedir el auto de *injunction* solicitado.

SENTENCIA de *M. Rodríguez Serra,* J. (San Juan, Segundo Distrito) en un procedimiento de injunction, declarando con lugar la demanda y que cada parte pagará sus costas. (2767) *Revocada y declarada sin lugar la demanda, sin costas.* (2768) *Confirmada.*

*H. G. Molina,* abogado de las apelantes; *Texidor & de la Haba,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Dos procedimientos de *injunction* fueron iniciados en la corte inferior en abril de 1921. Guardan estrecha relación. Fueron resueltos por sentencias de agosto 8, 1921, fundadas en una sola opinión. La tramitación de las apelaciones establecidas contra las sentencias ha sido muy lenta y laboriosa. La transcripción no se archivó hasta mayo 22, 1922. Se tardaron meses en la presentación de alegatos y tuvieron lugar dos vistas ante el Tribunal Supremo. Conjuntamente se celebraron dichas vistas y por esta sola opinión se estudiarán y resolverán todas las cuestiones envueltas.

De la prueba documental aportada aparece que el 1 de marzo de 1915, por escritura pública, se constituyó en la ciudad de San Juan, Puerto Rico, una sociedad mercantil "para negociar y traficar en la compra y venta de telas, paños, calzados, géneros y prendas de vestir y artículos de mercería, especialmente, y en general para toda clase de negocios y operaciones de lícito comercio," por término de dos años prorrogable por otro más, bajo la razón social de *Roque González y Co.*, siendo socios gestores Roque González y José Benito Alvarez y comanditario Agustín Sobrino. El capital de la sociedad se fijó en sesenta mil dólares aportando González cuarenta y cinco mil, Alvarez cinco mil, y Sobrino diez mil. Se acordó que la muerte de alguno de los socios no disolvería la sociedad que continuaría hasta su término "bajo la administración y gerencia del sobreviviente, sin la intervención de los herederos del fallecido o fallecidos."

El 17 de febrero de 1916 o sea antes de un año después de haberse constituido la sociedad, murió el socio gestor Roque González y la sociedad continuó de acuerdo con lo pactado bajo la dirección del otro socio gestor José Benito Alvarez.

El 5 de marzo de 1918 comparecieron ante notario público, personalmente o por medio de apoderados, José Be-

nito Alvarez, Agustín González, Laureano Alvarez, Trinidad
María de la Asunción Sobrino, viuda de Roque González,
Raquel María Trinidad González, hija de Roque González,
y Agustín Sobrino, y constituyeron una sociedad mercantil
en San Juan, P. R., bajo la razón social de *Roque González
y Co., Sucesores,* "para negociar y traficar en la compra y
venta de telas, paños, calzado, géneros, prendas de vestir
y artículos de mercería, especialmente, y en general para
toda clase de negocios y operaciones de lícito comercio,"
siendo su término dos años que empezarían a correr el 1 de
marzo de 1918, término prorrogable por un año más, y sus
socios gestores José Benito Alvarez, Agustín González y
Laureano Alvarez, y comanditarios la viuda y la hija de
Roque González, y Agustín Sobrino. Se fijó el capital en
setenta y cinco mil dólares. J. B. Alvarez aportó veinti-
cinco mil, A. González veinticinco mil, L. Alvarez cinco mil,
y los comanditarios veinte mil.

Por su término prorrogado de tres años, funcionó la mer-
cantil *Roque González y Co., Sucesores,* y el día 5 de marzo
de 1921 volvieron sus socios, personalmente o por medio de
apoderado, a comparecer ante notario y otorgaron una es-
critura en la que expusieron que habían "convenido consig-
nar la disolución de la sociedad en instrumento público, pa-
garle sus haberes a don Agustín González y a la Sucesión
de don Roque González, y nombrar liquidador." Y llevando
a efecto lo pactado, declararon disuelta y en estado de li-
quidación la sociedad mercantil *Roque González y Co., Su-
cesores;* aprobaron los actos de sus gerentes; "estando con-
venido que don Agustín González y la Sucesión de Roque
González se retiran de toda participación e interés de la so-
ciedad disuelta, en sus bienes y derechos y en su liquida-
ción," el don Agustín depositó cierta suma para pagar las
contribuciones sobre beneficios excesivos y se hizo responsa-
ble hasta cierta cantidad y durante cierto término de los
quebrantos de las cuentas comprendidas en el balance de 28
de febrero de 1921; hicieron constar que el saldo a favor

del socio González era $17,443.92 y el saldo a favor de la Sucesión de Roque González $8,597.38, y González por sí y a nombre de la Sucesión confesó recibidos dichos saldos y otorgó formal carta de pago; y *"en virtud de retirarse de toda participación en la sociedad disuelta"* don Agustín y la viuda y la hija de Roque González, se hizo constar que quedaban *"como únicos interesados en los bienes, acciones y derechos y en la liquidación de la misma"* los otros socios J. B. Alvarez, L. Alvarez y A. Sobrino, quienes nombraron liquidador a J. B. Alvarez.

Así las cosas, el 11 de marzo de 1921 José Benito Alvarez y Laureano Alvarez, personalmente, y José María Alvarez y Agustín Sobrino, por medio de apoderados, constituyeron una sociedad mercantil para girar bajo la razón social de *Roque González y Co., Sucesores,* con domicilio en San Juan, P. R., por término de dos años que comenzaría a regir el 1 de marzo de 1921, prorrogable por diez meses, y "para negociar y traficar en la compra y venta, al por mayor y menor, por cuenta propia o en comisión, de telas, paños, calzado, géneros, prendas de vestir y artículos de mercancía, especialmente, y en general para toda clase de negocios y operaciones de lícito comercio." J. B. Alvarez y L. Alvarez eran socios gestores y J. M. Alvarez y A. Sobrino comanditarios, siendo el capital social $86,000; $40,000 impuestos por J. B. Alvarez, $30,000 por L. Alvarez; $10,000 por el comanditario Sobrino y $6,000 por el otro comanditario J. M. Alvarez. Se hizo constar además en la escritura que la sociedad así constituída tomaba a su cargo la liquidación de la sociedad *Roque González & Co., Sucesores,* disuelta por escritura de 5 de marzo de 1921 y de la cual era único liquidador J. B. Alvarez.

Fechada el 1 de marzo de 1921, la nueva sociedad constituída por escritura de 11 del propio mes de marzo, dirigió al comercio una circular que dice:

"Muy señor nuestro.—Por vencimiento de nuestro contrato so-

cial, ha sido disuelta la firma que giraba en esta plaza bajo la razón social de Roque González & Co. Sucesores, Sociedad en Comandita, habiéndose constituído una nueva sociedad mercantil en Comandita con igual denominación, y que será continuadora y liquidadora de los negocios de aquella extinguida, según escritura pública otorgada ante el notario de esta ciudad don Damián Monserrat, Suro.—Son sus socios gestores don José Benito Alvarez Sobrino y don Laureano Alvarez Sobrino, y comanditarios don Agustín Sobrino Vicente y don José María Alvarez.—Mucho le estimaremos tome nota de las firmas estampadas al pie, y deseando merecerle la misma confianza dispensada a nuestros antecesores, nos reiteramos a sus órdenes, atentos y Ss. Ss.—Roque González & Co., Sucesores.—Don José Benito Alvarez, firmará.—Roque González & Co. Sucs.—Don Laureano Alvarez, firmará.—Roque González & Co. Sucs.''

Aparece también de la prueba documental que el 15 de marzo de 1921, por escritura pública, Gregorio Portela, Valentín Alvarez, Agustín González y la viuda y la hija de Roque González constituyeron una sociedad mercantil domiciliada en San Juan, P. R., bajo la razón social de *Sucesión de Roque González y Co., S. en C.,* ''para negociar y traficar especialmente en la compra y venta al por mayor y menor, por cuenta propia o en comisión de telas, paños, tejidos, sedería, calzado, sombreros, prendas de vestir, artículos de quincalla y mercería, y en general para todos los negocios y operaciones de lícito comercio,'' siendo Portela y V. Alvarez socios gestores, y A. González y la *Sucesión de Roque González* comanditarios. El capital se fijó en veinte mil dólares, de los cuales Portela impuso siete mil, V. Alvarez tres mil, A. González ocho mil y la Sucesión de Roque González dos mil.

Así las cosas, el once de abril de 1921 la Sucesión de Roque González, compuesta de su viuda y de su hija, inició la demanda de *injunction* origen del primero de los pleitos que estamos considerando contra *Roque González y Co., Sucesores,* compuesta de J. B. Alvarez, L. Alvarez, A. Sobrino y J. M. Alvarez. En ella se expresaron en forma condensada los hechos que dejamos narrados relativos a la constitución

y disolución de las sociedades y, además, se consignó lo que sigue:

"Y la Sucesión demandante alega que ni expresamente, ni por acto alguno suyo, ha consentido en ocasión alguna, en que el nombre de su causante Roque González ni el de su sucesión, se incluya en el título o razón social de la referida mercantil, y por el contrario, se ha opuesto al uso de tal nombre.

"VII. Que el uso del nombre Roque González por la demandada sin existir en dicha firma persona de ese nombre, y perteneciendo el mismo exclusivamente a su Sucesión, perjudica grandemente a la demandante, al privarla del uso exclusivo del mismo en sus negocios, y al acarrearle responsabilidad solidaria en la mercantil 'Roque González & Co. Sucesores, S. en C.' por permitir su uso.

"Y la demandante alega que tal uso del nombre del finado Roque González le causa un perjuicio, cuyo valor no puede estimarse por el momento, pero sin embargo es de naturaleza irreparable, y no tiene una compensación pecuniaria adecuada, ni remedio adecuado en ley.

"Y la demandante alega, que cuantas gestiones ha hecho para que la demandada 'Roque González & Co. Sucrs. S. en C.' y sus socios, desistan de usar el nombre de Roque González, han resultado infructuosas.

"Por todo lo que, la demandante SUPLICA A LA CORTE se sirva dictar un auto de Injunction contra la demandada 'ROQUE GONZÁLEZ & COMPANY, Sucesores, S. en C.', ordenándole que en el futuro se abstenga de usar en forma alguna el nombre de Roque González como parte de la razón social de la mercantil constituída por los socios de la demandada, y cualquier otro remedio que la corte estime procedente, con las costas y honorarios de abogados a la demandada."

El otro pleito sometido a nuestra consideración se inició el 23 de abril de 1921 por la parte demandada en el primero contra la sociedad "Sucesión de Roque González y Co. S. en C.," en solicitud de un auto de injunction prohibiendo a los demandados el uso en su firma de los nombres de "Sucesión de Roque González" o "Roque González."

La demanda fué declarada con lugar en el primero de los pleitos y sin lugar en el segundo y no conforme la sociedad *Roque González y Co., Sucesores,* constituída el 11

de marzo de 1921, interpuso los presentes recursos de apelación para ante este tribunal.

Hemos estudiado cuidadosamente los autos y los varios alegatos presentados y a continuación expondremos nuestro criterio sobre las cuestiones fundamentales envueltas que deciden, a nuestro juicio, los litigios, sin discutir aisladamente los errores señalados, ya que ello alargaría innecesariamente de modo extraordinario esta opinión.

No hay duda alguna que las compañías de que se trata en estos pleitos se constituyeron teniendo en cuenta el Código de Comercio que desde hace tantos años rige en Puerto Rico y que si bien ha sido necesariamente alterado a virtud de la aprobación de otras leyes, no ha sido aún objeto de una revisión completa como lo fué desde los primeros años de la nueva soberanía el Código Civil, o de una sustitución radical como en los casos de la Ley de Enjuiciamiento Civil, Código Penal, Ley de Enjuiciamiento Criminal y otros. Esa circunstancia hace difícil la aplicación íntegra, en su propio espíritu, de algunos de los preceptos del indicado Código de Comercio que se oponen a prácticas mercantiles introducidas por la realidad misma de la transformación operada.

Todo en estos pleitos gira alrededor del nombre de las sociedades demandadas. ¿Qué dice el Código de Comercio sobre ello?

Expresa dicho cuerpo legal—artículo 122—que las compañías mercantiles se constituyen generalmente adoptando alguna de las siguientes formas: 1, la *regular colectiva,* en que todos los socios, en nombre colectivo y bajo una razón social, se comprometen a participar, en la proporción que establezcan, de los mismos derechos y obligaciones; 2, la *comanditaria,* en que uno o varios sujetos aportan capital determinado al fondo común, para estar a las resultas de las operaciones sociales dirigidas exclusivamente por otros con nombre colectivo, y la *anónima,* en que formando el fondo común los asociados por partes o porciones ciertas, figuradas por acciones o de otra manera indubitada, encargan su

manejo a mandatarios o administradores amovibles que representan a la compañía bajo una denominación apropiada al objeto o empresa a que destine sus fondos.

Tanto la primitiva mercantil Roque González y Co., de 1915, como la Roque González y Co., Sucesores, de 1918, la Roque González y Co., Sucesores de 1921 y la Sucesión de Roque González y Co., S. en C., de 1921, fueron y son, de acuerdo con los hechos que dejamos narrados, sociedades comanditarias y el art. 146 del Código de Comercio dice: "La compañía en comandita girará bajo el nombre de todos los socios colectivos, de algunos de ellos o de uno solo, debiendo añadirse, en estos dos últimos casos, al nombre o nombres que se expresen, las palabras 'y compañía', y en todos, las de 'sociedad en comandita.' " Y el 147, expresa: "Este nombre colectivo constituirá la razón social, en la *que nunca podrán incluirse los nombres de los socios comanditarios.* Si algún comanditario incluyere su nombre o consintiese su inclusión en la razón social, quedará sujeto, respecto a las personas extrañas a la compañía, a las mismas responsabilidades que los gestores, sin adquirir más derechos que los correspondientes a su calidad de comanditario." Las itálicas son nuestras.

Siendo ello así, se necesita de muy poco esfuerzo para concluir que sólo la primitiva sociedad *Roque González y Cía.* de 1915, giró, en cuanto al nombre, de acuerdo con la ley. En todos los otros casos se violó el precepto legislativo, por que *Roque González* había ya muerto y por lo tanto no podía ser ni figurar como socio colectivo, cuando se constituyeron.

Si ésta fuera la única cuestión envuelta; si a los tribunales de justicia se les hubiera encomendado la tarea de observar, a gestión de cualquier ciudadano o por propia iniciativa, si determinada sociedad mercantil cumplía o nó con la ley en cuanto al uso del nombre y en caso negativo la facultad de acordar las medidas necesarias para impedirlo, sería muy fácil decidir y debería decidirse en estos casos que am-

bas sociedades demandadas cesaran de usar en sus razones sociales el nombre de Roque González, fallecido en 1916.

Pero ni ésa es nuestra tarea, ni tenemos esas facultades. Aquí, pidiendo que se dé cumplimiento al antiguo Código de Comercio, se han iniciado dos procedimientos modernos de *injunction,* de naturaleza equitativa, y esto envuelve otras consideraciones que deben tenerse en cuenta para actuar y fallar.

Refiriéndonos ahora exclusivamente al primero de los pleitos, preguntamos: ¿qué derecho tienen las demandantes para pedir el auto de *injunction* que solicitan? Alegan ellas que son la viuda y la hija y por tanto los herederos del nombre de *Roque González.* ¿Constituye el nombre de una persona una propiedad que se trasmite por herencia? El apellido de una persona se trasmite a sus hijos y descendientes y podrían imaginarse casos en que dichos hijos y descendientes pudieran recurrir con éxito a los tribunales de justicia en relación con el uso exclusivo de su apellido. Pero ése no es aquí el caso. Aquí no se trata de *Roque González* o del apellido *González,* sino de *Roque González y Co., Sucesores.*

¿Cuándo se usó por vez primera ese nombre comercial? Conocemos la constitución de *Roque González y Co.* en 1915. A juzgar por el nombre dado a la sociedad, por el capital impuesto por los socios y por la prueba testifical, Roque González era un antiguo comerciante de reconocido crédito. A él se unió José Benito Alvarez, quien, al ocurrir la muerte de Roque González, asumió la dirección exclusiva de la sociedad. ¿Qué ocurrió al vencerse el término del contrato? Una nueva sociedad fué formada. ¿Quiénes la constituyeron? El antiguo socio José Benito Alvarez cuyó capital aumentó de cinco a veinticinco mil dólares, y el antiguo comanditario Sobrino. La viuda y la hija de Roque González se convirtieron en socios comanditarios y dos nuevos elementos aportaron su concurso: Agustín González y Laureano Alvarez. ¿Qué relación tenía la nueva sociedad con la extin-

guida? Nada se dice en la escritura. Sin embargo de he-
cho fué su continuadora. Su nombre indicaba la entera ver-
dad de lo ocurrido: *Roque González y Co., Sucesores.*

Es entonces por vez primera que se usa el nombre comer-
cial origen de estos pleitos, en una forma contraria al Có-
digo de Comercio, como dejamos indicado, por el acuerdo
unánime de los socios. Tal nombre fué desde entonces,
1918, una de las propiedades de la compañía, y a levantarlo
se dedicó el esfuerzo de los socios, especialmente el de José
Benito Alvarez que continuó siendo el cerebro director de
*Roque González y Co., Sucesores,* 1918, como lo había sido
de *Roque González y Co.* desde 1916 en que acaeció la muerte
de Roque González. Hacemos esta afirmación de acuerdo
con la prueba testifical y con las constancias de la misma es-
critura de 1918. Por ejemplo de la escritura aparece que
Agustín González aportó el mismo capital que José Benito
Alvarez y eso no obstante el sueldo de Alvarez se fijó en
dos mil dólares anuales y el de González en mil, y el reparto
de ganancias se pactó en una escala mayor para Alvarez.
González parece que era un hombre enfermo que no podía
dedicar todas sus actividades a la sociedad.

Así las cosas, transcurrieron los tres años del contrato.
Los negocios prosperaron pero las relaciones entre los so-
cios imponían ciertos cambios. Se había pactado en la es-
critura de 1918 que "vencido el término social o la prórroga
en su caso, se procederá a la liquidación de la sociedad, pa-
gándose en primer lugar su pasivo, y luego a sus socios sus
haberes, en efectivo, existencias, bienes, cuentas y créditos
en regla de proporción." No se siguió ese procedimiento.
Los socios que verdaderamente dirigían el negocio pactaron
la compra de sus participaciones a aquellos cuya interven-
ción era de hecho por medio de su capital únicamente, a sa-
ber: Agustín González y la viuda y la hija de Roque Gon-
zález.

En el acto del juicio declaró Laureano Alvarez amplia-
mente y a la siguiente pregunta: "¿Cuál fué el acuerdo?"

contestó: "El de comprarle la participación de él,—se refiere a Agustín González—de la viuda y de la hija de Roque González. . . . . Entregarle en efectivo todo lo que tenían en la casa. . . . ." Y Victorio Ochoa, el otro único testigo que declaró en el juicio, dijo que intervino en las negociaciones como representante de Agustín Sobrino, uno de los comanditarios, que dicho sea de paso es padre de la viuda de Roque González, "sobre proposiciones de venta." "Se pagó en efectivo sus partes—se refiere a A. González y a la viuda y la hija de Roque González—de acuerdo con las existencias de la casa, las cuentas y demás." Y sostiene que tal procedimiento es muy distinto al de la liquidación que se pactó en el contrato social de 1918.

Es conveniente indicar que el testigo Victorio Ochoa no sólo actuó en esa ocasión como representante de Sobrino, sino que en otras ocasiones representó a la viuda y a la hija de Roque González y en las tantas veces repetida escritura de 1918 hay una cláusula que dice: "Todo asunto de diferencia que surgiere entre los socios gestores, será sometido a la opinión de don Victoriano Ochoa, o más personas si fuese necesario."

No hemos perdido de vista los preceptos de la ley de evidencia que invoca la parte apelada. La escritura debe prevalecer y prevalecerá en nuestra resolución, pero las anteriores manifestaciones y otras del testigo Ochoa a que nos referiremos luego dan color y explican satisfactoriamente ciertas cláusulas del contrato de disolución y permiten penetrar en la verdad de lo ocurrido.

La teoría de la compra de las participaciones de Agustín González y de la viuda y la hija de Roque González aparece claramente de la escritura de 1921. Cuando terminó en 1918 *Roque González y Co.,* nada se dijo sobre su liquidación. Nada había que hacer porque la nueva sociedad constituída comprendía todos los socios y de hecho más que liquidarla lo que hizo fué continuarla. El caso fué algo distinto en 1918, porque salían del seno social, se separaban,

tres socios. Por eso convinieron "consignar la disolución
de la sociedad en instrumento público, pagarle sus haberes
a don Agustín González y a la Sucesión de don Roque Gon-
zález, y nombrar liquidador," como se dice textualmente en
el contrato. El liquidador nombrado fué José Benito Alva-
rez quien quedó en el mismo local, con los mismos libros, el
mismo material timbrado de escritorio y quien al constituir
la nueva sociedad Roque González y Co., Sucesores, 1921, la
encargó de la liquidación, siendo dicha sociedad de hecho la
continuadora del negocio.

Pero hay más, existen en la escritura de disolución mani-
festaciones expresas de que los socios a quienes se pagó en
efectivo "se retiran de toda participación e interés de la
sociedad disuelta, en sus bienes y derechos y en su liquida-
ción," quedando los otros socios, los que constituyeron la
nueva sociedad *Roque González y Co., Sucesores,* 1921, "como
únicos interesados en los bienes, acciones y derechos y en
la liquidación."

Aunque nada expresamente se pactara, es un hecho que
el buen nombre, el *good will,* de *Roque González y Co., Su-
cesores,* 1918, era uno de sus bienes, era su exclusiva pro-
piedad, y por tanto debe lógicamente concluirse que aquella
propiedad quedó también "en los únicos interesados en los
bienes" y que aquellos que se retiraron "de toda participa-
ción e interés" en esos mismos bienes, ningún derecho tie-
nen a reclamar. En otras palabras, el nombre comercial
"Roque González y Co., Sucesores," adoptado en 1918, llegó
a ser la propiedad de la sociedad constituída y pudo dispo-
nerse de él por la sociedad y debe entenderse, de acuerdo
con las circunstancias que concurren, que de él se dispuso
en la forma que hemos dicho.

La conclusión a que hemos llegado está enteramente sos-
tenida por las declaraciones de Laureano Alvarez y de Vic-
toriano Ochoa, cuyas manifestaciones no impugnadas queda-
ron enteramente en pie. Procuraremos extractar las de

Ochoa, conservando siempre el propio lenguaje del testigo. Dijo así:

"La costumbre comercial de muchos años en San Juan, es que cuando fallece alguno de los socios, o por cualquier cambio, cuando una parte compra la parte de la otra, si no quiere ponerle el nombre propio, pasa a ser sucesores y continuar los mismos negocios y aprovechándose de la parte que se ha comprado por ser un nombre conocido. . . . .

"Es una costumbre comercial. Nosotros estamos en las mismas condiciones. La Madrid & Co. La costumbre es cuando muere el primer socio, luego que se termina el contrato social, pasa a ser sucesores como son la mayor parte de las casas en San Juan; es cuando se compra la parte de contado, porque de lo contrario viene una liquidación que siempre es perjudicial.

    *     *     *     *     *     *     *

"Sí señor, en vez de esperar una liquidación se paga en dinero. Una liquidación siempre causa perjuicios y ahora más, se pueden perder quince o veinte mil pesos, al comprarle es para seguir los mismos negocios, con los mismos libros de la casa y necesitan el nombre para trabajar. Cuando fallece uno queda la sucesión y una segunda persona tiene el privilegio de ser socio de la anterior, queda con la misma firma y con los mismos libros. Una liquidación es perjudicial. Cuando se separan dos dice uno 'no quiero que se use mi nombre,' entonces no se compra y se sigue con el nombre de uno."

    *     *     *     *     *     *     *

"Sí señor, nosotros hemos continuado con L. La Madrid & Co., no quisimos cambiar por la marcha de la casa, es una ventaja muy grande para los continuadores y para la gente que sale. Para el saliente es que coge el dinero en efectivo."

Preguntado: "¿Por qué es que continuó la casa así con el nombre anterior en vez de decir Victoriano Ochoa & Co. o Benito Alvarez & Co., por qué continuó con el nombre anterior?"—Contestó: "Por lo manifestado anteriormente. Desde el momento que se compra todo y se liquida en efectivo, es para seguir usando todo lo que hay en la casa, libros, almacén, continuar con las mismas cuentas, ése es el beneficio que trae el no cambiar, para eso se da el dinero en efectivo para esa ventaja."

Por último después de varias preguntas y respuestas del testigo relativas a su intervención en las negociaciones que

precedieron al contrato de disolución, tuvo lugar el siguiente interrogatorio:

"P. ¿En esa celebración se tuvo en cuenta, se habló o se trató de que la nueva razón social continuaba el uso del antiguo nombre?— R. No se habló nada absolutamente del nombre, sino continuar con los mismos negocios.   P. ¿No se habló de nombre?—R. Ni palabra, era un entendido que continuaba lo mismo, para eso compraban o vendían.   Abo. Dte.   P. ¿Si no se habló nada de eso lo entendido era continuar con el nombre?—R. Sí señor, con el nombre."

Bajo esas circunstancias, creemos que la viuda y la hija de Roque González, las demandantes en el primero de los pleitos, no han demostrado que tengan derecho alguno para impedir que los demandados usen como razón social el nombre de *Roque González y Co. Sucesores,* especialmente habiendo escogido para ejercitar su alegado derecho el procedimiento de *injunction.*

Además para que la acción de las demandantes pudiera prosperar, hubiera sido necesario que probaran la existencia del perjuicio que en su demanda alegaron, y a nuestro juicio no hay prueba.

Se ha indicado que si las demandantes permiten que los hechos continúen, podrían ser responsables de acuerdo con el párrafo segundo del artículo 147 del Código de Comercio. No podemos percibir tal responsabilidad.   Las demandantes no son comanditarios.   Las demandantes no se llaman Roque González.   La hija heredó el apellido de su padre, no el nombre.   *Roque González y Co., Sucesores,* de 1921, la sociedad demandada, se constituyó por contrato consignado en escritura pública, que se halla transcrita en el registro mercantil y en la cual consta quiénes son los socios responsables.   La circular que la sociedad demandada pasó a sus relacionados y al comercio en general es clara.   No existe, pues, a nuestro juicio ni la más remota posibilidad de perjuicio para las demandantes como consecuencia del precepto legal indicado en relación con los hechos de este caso.

En cuanto al segundo pleito diremos que hemos exami-

nado toda la prueba practicada y si bien demuestra que ha habido algunas dificultades en la dirección de las cartas y en el cobro de algunas cuentas debido a la semejanza que existe entre el nombre de Sucesión de Roque González y Sucesores de Roque González, no creemos que se haya demostrado un verdadero perjuicio, ni una competencia injusta en los negocios.   Siendo ello así, tampoco debe prosperar la acción ejercitada.

La sentencia dictada en el recurso *número 2767 debe revocarse,* pronunciándose otra declarando *sin lugar la demanda,* sin especial condenación de costas, *y la sentencia dictada en el recurso número 2768 debe confirmarse.*

En el caso No. 2767, los Jueces Asociados Sres. Aldrey y Franco Soto disintieron y en el caso No. 2768 firmaron conforme con la sentencia.

El Juez Asociado Sr. Wolf disintió en este último caso.