

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Nereida Muñiz Noriega<br><br>     Demandante<br><br>           v.<br><br>Héctor D. Muñoz Bonet<br><br>     Demandado | Certiorari<br><br>2010 TSPR 13<br><br>178 DPR \_\_\_\_ |

Número del Caso: AC-2008-28


Fecha:    29 de enero de 2010


Tribunal de Apelaciones:

        Región Judicial de Aguadilla Panel VI


Juez Ponente:

        Hon. Germán J. Brau Ramírez


Abogados de la Parte Peticionaria:

        Lcdo. Fernando Nieves Camacho



Materia: División Bienes Comunes

Este documento constituye un documento oficial del   Tribunal Supremo que está sujeto a los cambios y correccione  s del proceso de compilación y publicación oficial de las   decisiones del Tribunal. Su distribución electrónica se hace c   omo un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nereida Muñiz Noriega

    Demandante

    v

                             AC-2008-028

Héctor D. Muñoz Bonet

    Demandado

Opinión del Tribunal emitida por el Juez Asociado señor Rivera Pérez

San Juan, Puerto Rico, a 29 de enero de 2010.

Mediante el presente recurso de *certiorari* se nos solicita que revisemos una Sentencia emitida por el Tribunal de Apelaciones. En dicha Sentencia, el foro apelativo intermedio confirmó y revocó en parte el dictamen emitido por el Tribunal de Primera Instancia, el cual declaró sin lugar la demanda de liquidación y división de bienes presentada por la Sra. Nereida Muñiz Noriega y con lugar la reconvención presentada por el Sr. Héctor D. Muñoz Bonet.

Veamos los hechos que dieron origen a la presente controversia.

I

El 14 de julio de 1990, la Sra. Nereida Muñiz Noriega y el Sr. Héctor D. Muñoz Bonet contrajeron matrimonio.[1] Como producto de dicho matrimonio, ambas partes procrearon un hijo y residieron en un bien inmueble ubicado en el Barrio Punta del Municipio de Rincón. Este bien inmueble era una propiedad privativa del señor Muñoz Bonet, el cual le fue donado por sus padres antes de contraer matrimonio.[2]

Durante la vigencia del matrimonio ambos cónyuges asumieron varias deudas. Entre ellas, un préstamo hipotecario por $42,750.00, el cual fue garantizado con el bien inmueble antes descrito;[3] un préstamo personal por $12,000.00;[4] varias tarjetas de crédito;[5] y otros préstamos personales adicionales para adquirir vehículos de motor.[6]

De igual manera, durante la vigencia del matrimonio, el señor Muñoz Bonet operó un negocio de

---

[1] Las partes no estipularon régimen económico patrimonial alguno que gobernara su vida conyugal. Consecuentemente, el régimen que regula dicho matrimonio, según el Código Civil de Puerto Rico, lo es la Sociedad Legal de Bienes Gananciales.

[2] *Véase* Apéndice, pág. 54.

[3] *Íd.*, págs. 41, 57-59.

[4] *Íd.*, págs. 34-40.

[5] *Íd.*, págs. 44-49.

[6] *Íd.*, pág. 56.

gomera y piezas de automóviles. Este negocio también está ubicado en el Barrio Punta del Municipio de Rincón.[7]

Siete (7) años más tarde, en noviembre del 1997, el señor Muñoz Bonet y la señora Muñiz Noriega se separaron.[8] Como consecuencia de esta separación, ambos cónyuges acordaron que la señora Muñiz Noriega se quedaría con varios bienes muebles y enseres del hogar, incluyendo un juego de cuarto, juego de sala, estufa, nevera, entre otros.[9] Las partes retuvieron sus respectivos vehículos de motor.

El 4 de febrero de 1998, la señora Muñiz Noriega presentó una demanda de divorcio en contra del señor Muñoz Bonet. Con posterioridad a la presentación de dicha demanda, el señor Muñoz Bonet liquidó y pagó las deudas que tenía la sociedad legal de bienes gananciales.[10]

---

[7] *Íd.*, págs. 55.

[8] *Íd.*, pág. 4.

[9] *Íd.*, pág. 50.

[10] En marzo del 1998, el señor Muñoz Bonet saldó varias deudas gananciales. Entre ellas, el préstamo hipotecario antes descrito, cuyo balance ascendía a $39,543.64; una deuda adicional ascendente a $605.63, referente a una línea de crédito con el Westernbank; y en agosto del 1998 otra deuda ascendente a $4,783.95, cuyo acreedor lo era la Cooperativa de Ahorro y Crédito de Rincón. Para saldar esta última deuda el señor Muñoz Bonet redimió las acciones que la sociedad legal de

El 14 de diciembre de 1999, el Tribunal de Primera Instancia dictó una sentencia en donde decretó el divorcio de ambas partes. En dicha sentencia, el foro primario le otorgó la custodia del menor a la señora Muñiz Noriega, estableció una pensión alimenticia de $253.00, y determinó la manera en que se llevarían a cabo las relaciones paterno filiales.[11]

Varios años más tarde, el 15 de mayo de 2002, la señora Muñiz Noriega presentó una demanda de liquidación y división de bienes en el Tribunal de Primera Instancia. En su demanda, la señora Muñiz Noriega alegó que no deseaba permanecer en la comunidad post ganancial compuesta por ella y por el señor Muñoz Bonet. Por ello, solicitó que se liquidaran y dividieran los bienes adquiridos durante la vigencia del matrimonio.[12]

Por su parte, el 10 de enero de 2003, el señor Muñoz Bonet contestó la demanda de liquidación y división de bienes presentada en su contra y negó que hubieran bienes gananciales que dividir entre las partes. A su vez, presentó una reconvención en la que alegó que la señora Muñiz Noriega no pagó la parte de las obligaciones gananciales que le correspondía y que

---

bienes gananciales tenía en la Cooperativa de Ahorro y Crédito de Rincón. *Véase* Apéndice, págs. 3-4.

[11] *Véase* Apéndice, pág. 26.

[12] *Íd.*, pág. 19.

fue él quien pagó la totalidad de las obligaciones gananciales contraídas durante la vigencia del matrimonio. Por ello, solicitó como remedio los créditos a los cuales alegó tener derecho.[13]

El 10 de septiembre de 2007, el Tribunal de Primera Instancia celebró una vista evidenciaria.[14] A esos efectos, las partes estipularon la admisibilidad de varios documentos, excepto la admisibilidad del estado financiero del señor Muñoz Bonet correspondiente al año 1998.[15] Como prueba adicional la señora Muñiz Noriega presentó su propio testimonio.[16]

Luego de celebrada la vista evidenciaria, el 8 de octubre de 2007, el Tribunal de Primera Instancia dictó sentencia.[17] En su Sentencia, el foro primario determinó

---

[13] *Íd.*, pág. 20.

[14] *Íd.*, págs. 51-85.

[15] Las partes estipularon la admisibilidad de los documentos siguientes: (1) Certificación de Préstamo, Cooperativa de Ahorro y Crédito de Rincón; (2) Solicitud de Préstamo, Cooperativa de Ahorro y Crédito de Rincón; (3) Certificación de Deudas, emitida el 25 de febrero de 2003 por el Westernbank; (4) Certificación de Deuda en Cuenta Rotativa, emitida el 5 de marzo de 2003 por la Cooperativa de Ahorro y Crédito de Rincón; (5) Certificación de Deuda en Cuenta Rotativa, emitida el 28 de agosto de 2006, por la Cooperativa de Ahorro y Crédito de Rincón; (6) Informe de Crédito del señor Muñoz Bonet; y (7) Carta redactada y suscrita por el señor Muñoz Bonet. *Véase* Apéndice, págs. 6, 52-53.

[16] *Véase* Apéndice, págs. 51-85.

[17] *Íd.*, págs. 17-18.

que las partes no adquirieron bienes durante la vigencia del matrimonio;[18] que el señor Muñoz Bonet pagó, por sí solo, todas las deudas gananciales;[19] y que la señora Muñiz Noriega retuvo varios bienes muebles y enseres del hogar.[20] Además, el foro primario indicó que la señora Muñiz Noriega no presentó prueba que sostuviera su reclamación en cuanto a la naturaleza ganancial de parte del inventario del negocio de gomas.[21] Por ello, el Tribunal de Primera Instancia declaró sin lugar la demanda de liquidación y división de bienes presentada por la señora Muñiz Noriega y con lugar la reconvención presentada por el señor Muñoz Bonet. Consecuentemente, le ordenó a la señora Muñiz Noriega el pago de $21,269.82, el cual incluyó $1,500, en concepto de honorarios de abogado y temeridad.[22]

Inconforme con el dictamen emitido por el Tribunal de Primera Instancia, la señora Muñiz Noriega presentó un recurso de apelación ante el Tribunal de Apelaciones.[23] En su recurso, la señora Muñiz Noriega alegó que el foro primario erró al determinar que no se

---

[18] *Íd.*, pág. 17.

[19] *Íd.*, págs. 17-18.

[20] *Íd.*, pág. 17.

[21] *Íd.*, pág. 18.

[22] *Íd.*

[23] *Íd.*, pág. 86.

presentó prueba indicativa del valor del inventario y de su naturaleza ganancial; al imponerle el pago de $21,269.82; al no concederle los créditos que la ley contempla por las deudas asumidas por el señor Muñoz Bonet en perjuicio de la sociedad de gananciales; y al no concederle los créditos que la ley contempla por las deudas asumidas por el señor Muñoz Bonet luego de presentada la demanda de divorcio.[24]

El 2 de mayo de 2008, el Tribunal de Apelaciones dictó sentencia.[25] En su Sentencia, el foro apelativo intermedio confirmó aquella parte del dictamen emitido por el Tribunal de Primera Instancia que declaró sin lugar la demanda de liquidación y división de bienes

---

[24] En específico, la señora Muñiz Noriega alegó en su recurso de apelación que durante la vigencia del matrimonio el señor Muñoz Bonet asumió varias deudas en detrimento de la sociedad legal de bienes gananciales y otras deudas luego de presentada la demanda de divorcio, las cuales alegadamente fueron pagadas con dinero ganancial.

En cuanto a las deudas asumidas por el señor Muñoz Bonet en detrimento de la sociedad de gananciales, la señoras Muñiz Noriega alegó que el demandado utilizó $10,000.00, del préstamo hipotecario antes descrito para hacerle mejoras al hogar conyugal, el cual era un bien inmueble de su pertenencia, y que también asumió otro préstamo de $10,695.00, para adquirir un automóvil que luego le regaló a una amiga. *Véase* Apéndice, págs. 90, 93.

En cuanto a las deudas asumidas por el señor Muñoz Bonet luego de presentada la demanda de divorcio, la señora Muñiz Noriega enumeró varias deudas y alegó que éstas fueron pagadas con dinero ganancial a pesar de haber sido asumidas luego de presentar la demanda de divorcio. *Véase* Apéndice, págs. 91-93.

[25] *Véase* Apéndice, pág. 2.

presentada por la señora Muñiz Noriega.[26]  Ello, debido a que el foro apelativo intermedio determinó que las partes no adquirieron bienes durante la vigencia del matrimonio;[27] que el negocio de gomas era privativo del señor Muñoz Bonet;[28] y que la señora Muñiz Noriega no presentó evidencia sobre las alegadas deudas asumidas en perjuicio de la sociedad de gananciales,[29] como tampoco presentó evidencia sobre las deudas asumidas luego de presentada la demanda de divorcio.[30]

No obstante, el Tribunal de Apelaciones revocó aquella parte de la sentencia dictada por el Tribunal de Primera Instancia que declaró con lugar la reconvención presentada por el señor Muñoz Bonet.[31]  Ello, pues el foro apelativo intermedio también determinó que el señor Muñoz Bonet no había sostenido su reclamo en cuanto a que las deudas gananciales fueron pagadas en su totalidad con dinero privativo de su pertenencia.[32]  A esos efectos, el foro apelativo intermedio señaló que el

---

[26] *Íd.*, pág. 15.

[27] *Íd.*, págs. 5 y 11.

[28] *Íd.*, pág. 3.

[29] *Íd.*, pág. 12.

[30] *Íd.*, pág. 13.

[31] *Íd.*, pág. 15.

[32] *Íd.*, pág. 14.

cuadro fáctico del caso apuntaba a que las deudas gananciales fueron pagadas con dinero ganancial.[33]

Nuevamente inconforme, el 5 de junio de 2008, la señora Muñiz Noriega presentó un recurso de *certiorari* ante este Tribunal.[34] En su recurso, la señora Muñiz Noriega alegó que el Tribunal de Apelaciones cometió los errores siguientes:

> **Erró el Honorable Tribunal de Apelaciones al determinar que las partes no adquirieron bienes durante la vigencia del matrimonio entre ambos; que el negocio de venta de gomas y piezas para vehículos de motor es privativo del Apelado.**
>
> **Erró el Tribunal de Apelaciones al indicar en la Sentencia que la Demandante no presentó prueba indicativa del valor del inventario y las ventas del negocio ganancial, que opera el demandado.**
>
> **Erró el Honorable Tribunal de Apelaciones al no conceder a la demandante los créditos que la ley contempla por el pago, con dinero ganancial de hipoteca sobre bien privativo del demandado; por el pago con dinero ganancial de préstamos asumidos por él luego de radicada la demanda sobre divorcio, por la compra de un automóvil que el Sr. Muñoz regaló a una tercera persona; y por el valor del inventario y equipo del negocio, entre otros.**

---

[33] *Íd.*

[34] El recurso originalmente presentado ante este Tribunal fue denominado como apelación. Éste, tal y como fue presentado, incluyendo las disposiciones legales que establecen la jurisdicción de este Tribunal, no cumple con las Reglas 17 y 18 del Reglamento de este Tribunal. 4 L.P.R.A. Ap. XXI-A R.17-18. Sin embargo, conforme a la Regla 18(b)(2) del mismo cuerpo, acogimos el recurso de apelación presentado por la señora Muñiz Noriega como un recurso de *certiorari*. 4 L.P.R.A. Ap. XXI-A R.18(b)(2).

Luego de varios trámites procesales, el 30 de abril de 2009, le concedimos al señor Muñoz Bonet un término de diez (10) días para que compareciera y presentara su posición. Expirado dicho término sin que la parte demandada expresara su posición, procedemos a resolver.

## II

El matrimonio es una institución civil que procede de un contrato civil en virtud del cual un hombre y una mujer se obligan mutuamente a ser esposo y esposa, y a cumplir el uno para con el otro los deberes que la ley les impone.[35] En cuanto al régimen económico patrimonial que regirá el matrimonio, el Código Civil de Puerto Rico establece que a falta de capitulaciones matrimoniales válidas el régimen económico patrimonial supletorio lo es la sociedad legal de bienes gananciales.[36]

### A

La sociedad legal de bienes gananciales comienza el mismo día en que se celebra el matrimonio.[37] Ésta es una entidad económica familiar *sui géneris* que por ser

---

[35] 31 L.P.R.A. § 221 (Sup. 2009).

[36] R. Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada, San Juan, 1997, Vol. 1, pág. 321.

[37] 31 L.P.R.A. § 3622 (1990).

su propósito principal y razón de ser diferentes a las de otras empresas, comunidades o sociedades regulares,[38] no tiene el mismo grado de personalidad jurídica que las sociedades ordinarias o entidades corporativas.[39] "Contraído el matrimonio bajo el régimen de la sociedad legal de gananciales, la gestión económica que realiza cada cónyuge se hace en beneficio de dicha sociedad y no para beneficio individual".[40]

Son bienes gananciales: (1) los adquiridos por título oneroso durante el matrimonio a costa del caudal común, bien se haga la adquisición para la comunidad, bien para uno solo de los esposos; (2) los obtenidos por la industria, sueldo o trabajo de los cónyuges o de cualquiera de ellos; y (3) los frutos, rentas o intereses percibidos o devengados durante el matrimonio, procedentes de los bienes comunes o de los peculiares de cada uno de los cónyuges.[41] En fin, "pertenecen a la sociedad ganancial todos aquellos beneficios y ganancias obtenidas durante la vigencia del matrimonio, a título

---

[38] García v. Montero Saldaña, 107 D.P.R. 319, 322 (1978).

[39] Reyes v. Cantera Ramos, Inc., 139 D.P.R. 925, 928-929 (1996).

[40] R. Serrano Geyls, op cit., pág. 338.

[41] 31 L.P.R.A. § 3641 (1990). *Véanse además*, Díaz v. Alcalá, 140 D.P.R. 959 (1996); Echevarría Jiménez v. Sucn. Pérez Meri, 123 D.P.R. 664 (1989).

oneroso, provenientes del trabajo o industria de los cónyuges y del producto de sus bienes propios".[42]

De igual forma, son gananciales las expensas útiles hechas en los bienes privativos de cualquiera de los cónyuges mediante anticipaciones de la sociedad o por la industria del marido o de la mujer.[43]

> Por "expensas útiles" debe entenderse "todo gasto que produzca utilidad o aumento de valor a los bienes de los cónyuges, en cualquier concepto que sea, ya constituya verdadera mejora útil o de mero recreo", ya consista en reparaciones que no constituyan obligación de la sociedad, o en cualquier otro beneficio no obligatorio para esa sociedad. Se trata aquí de capital ganancial que se utiliza en interés de los bienes privativos de cualquiera de los cónyuges; capital que no se pierde, sino que se transforma en un crédito a favor de la sociedad ganancial contra el cónyuge de que se trate. Dicho crédito se recuperará al momento de la liquidación de dicha sociedad de gananciales según surge del art. 1317 C.C.[44]

Cónsono con lo anterior, hemos resuelto que para calcular el crédito en concepto de expensas útiles se toma en consideración el aumento del bien mejorado más

---

[42] R. Serrano Geyls, op cit., pág. 338.

[43] 31 L.P.R.A. 3644 § (1990). Lo serán también los edificios construidos durante el matrimonio en suelo privativo de uno de los cónyuges, abonándose el valor del suelo al cónyuge a quien pertenezca. 31 L.P.R.A. 3644 § (1990).

[44] R. Serrano Geyls, op cit., pág. 379 (citando a J. Castán Tobeñas, Derecho Civil español común y foral, Madrid, Reus, 1994, T. V, Vol. 1, pág. 1046). Véanse además, Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219 (1984); Salazar v. Registrador, 27 D.P.R. 64 (1919).

ciertas modificaciones.[45]  El aumento del bien mejorado se distribuye entre el cónyuge propietario de dicho bien y la sociedad de gananciales en proporción al valor del bien y al costo de la mejora al momento en que dicha mejora fue realizada.[46]

Sin embargo, la naturaleza ganancial de los bienes adquiridos durante la vigencia del matrimonio es controvertible.  Estos bienes gozan de una presunción *iuris tantum* la cual puede ser rebatida por la parte que alega que dichos bienes son privativos.  La parte que alegue el carácter privativo de determinado bien tendrá el peso de la prueba para derrotar esta presunción de ganancialidad.[47]

El Código Civil de Puerto Rico también reconoce el carácter privativo de determinados bienes.  Son bienes propios de cada uno de los cónyuges: (1) los que aporte al matrimonio como de su pertenencia; (2) los que

---

[45] Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 227 (1984) (*citando a* O.V. Torralba Soriano, Las expensas útiles del apartado primero del artículo 1.404 del Código Civil, 46 Rev. Der. Inmob. 93 (1970)).  *Cf.* García v. Montero Saldaña, 107 D.P.R. 319, 326-328 (1978), en donde se optó por equiparar el crédito en concepto de expensas útiles al costo de la inversión hecha en el bien privativo.

[46] Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 227 (1984) (*citando a* O.V. Torralba Soriano, Las expensas útiles del apartado primero del artículo 1.404 del Código Civil, 46 Rev. Der. Inmob. 93 (1970)).

[47] 31 L.P.R.A. § 3647 (1990).  *Véase además* R. Serrano Geyls, op cit., págs. 332-333.

adquiera durante él, por título lucrativo, sea por donación, legado o herencia; (3) los adquiridos por derecho de retracto o por permuta con otros bienes, pertenecientes a uno solo de los cónyuges; y (4) los comprados con dinero exclusivo de la mujer o del marido.[48] La procedencia privativa de un bien no pierde tal carácter por el hecho de invertirse posteriormente fondos pertenecientes a la sociedad legal de bienes gananciales.[49] Esto, pues el propio "régimen de gananciales que prevalece en Puerto Rico reconoce como axioma el patrimonio individual de cada cónyuge separado del de la sociedad de gananciales".[50]

Por su parte, son obligaciones de la sociedad legal de gananciales: (1) las deudas y obligaciones contraídas durante el matrimonio por cualquiera de los cónyuges; (2) los atrasos o créditos devengados durante el matrimonio, de las obligaciones a que estuviesen afectos así los bienes propios de los cónyuges como los

---

[48] 31 L.P.R.A. § 3631 (1990). *Véanse además*, López v. González, 163 D.P.R. 275 (2004); Díaz v. Alcalá, 140 D.P.R. 959 (1996); Funding v. Registrador, 133 D.P.R. 549 (1993); Molina v. Carlo, 121 D.P.R. 362 (1988); López v. Yordán, 104 D.P.R. 594 (1976); Vélez v. Medina, 99 D.P.R. 113 (1970); Robles Ostolaza v. Universidad de Puerto Rico, 96 D.P.R. 583 (1968); Sunc. Santaella v. Srio. Hacienda, 96 D.P.R. 442 (1968); Lanausse v. Silva, 84 D.P.R. 546 (1962).

[49] García v. Montero Saldaña, 107 D.P.R. 319, 335 (1978).

[50] R. Serrano Geyls, op cit., pág. 338

gananciales; (3) las reparaciones menores o de mera conservación hechas durante el matrimonio en los bienes peculiares de cualquiera de los cónyuges;[51] (4) las reparaciones mayores o menores de los bienes gananciales; (5) el sostenimiento de la familia y la educación de los hijos comunes y de cualquiera de los cónyuges; y (6) los préstamos personales en que incurra cualquiera de los cónyuges.[52]

Sin embargo, al igual que los bienes gananciales, las deudas y obligaciones asumidas durante el matrimonio por cualquiera de los cónyuges también gozan de una presunción de ganancialidad controvertible.[53] Así, si una parte prueba que determinada deuda u obligación fue contraída para el beneficio exclusivo de uno de los cónyuges; que no sirvió el interés de la familia; o que fue efectuada con el ánimo de perjudicar o defraudar al otro cónyuge, dicha deuda no se reputará ganancial.[54] Cónsono con lo anterior, hemos resuelto que el peso de

---

[51] Las reparaciones mayores no serán a cargo de la sociedad. 31 L.P.R.A. § 3661 (1990).

[52] 31 L.P.R.A. § 3661 (1990).

[53] W.R.C. Properties, Inc. v. Santana, 116 D.P.R. 127, 134-135 (1985); Banco de Ahorro del Oeste v. Santos, 112 D.P.R. 70, 77-78 (1982).

[54] Íd. Véase además R. Serrano Geyls, op cit., pág. 397-407.

la prueba le corresponde al cónyuge que niega la naturaleza ganancial de dicha deuda u obligación.[55]

Tampoco deben catalogarse como gananciales las deudas u obligaciones contraídas luego de radicada la demanda de divorcio.[56] Cualquier deuda contraída por alguno de los cónyuges desde la fecha de la radicación de la demanda de divorcio hasta la fecha en que sea firme la sentencia de divorcio será de la exclusiva responsabilidad del cónyuge que la contraiga, a menos que el cónyuge contrayente tenga la autorización expresa del tribunal donde se esté ventilando la acción de divorcio.[57] **Cuando el pago de una deuda de esta naturaleza se efectúa antes que advenga firme la sentencia de divorcio, se presume que dicho pago fue hecho con dinero ganancial. Esto, pues el Artículo 101 del Código Civil no altera la presunción de gananciabilidad *iuris tantum* de la cual gozan los bienes adquiridos durante el matrimonio,[58] institución que se**

---

[55] W.R.C. Properties, Inc. v. Santana, 116 D.P.R. 127, 134-135 (1985); Banco de Ahorro del Oeste v. Santos, 112 D.P.R. 70, 77-78 (1982).

[56] 31 L.P.R.A. § 344 (1990).

[57] Suarez Martínez v. Tribunal Superior, 85 D.P.R. 544, 549 (1962); Alameda v. Registrador, 76 D.P.R. 230, 239 (1954). *Véanse además* García v. Montero Saldaña, 107 D.P.R. 319 (1978); Lugo Montalvo v. González Mañón, 104 D.P.R. 372 (1975).

[58] 31 L.P.R.A. § 3647 (1990). (Énfasis nuestro).

**disuelve una vez adviene final y firme la sentencia de divorcio y no cuando se radica la demanda de divorcio.**[59]

Disuelta una sociedad ganancial, el marido y la mujer hacen suyos por mitad las ganancias o beneficios obtenidos indistintamente por cualquiera de los cónyuges durante el mismo matrimonio.[60] Sin embargo, aunque la disolución del matrimonio acarrea la terminación del régimen de la sociedad legal de gananciales, la liquidación del capital común de los ex cónyuges no siempre ocurre simultáneamente a dicha disolución.[61] En esos casos sobreviene un período en el que se mezclan y confunden provisionalmente los bienes de los ex cónyuges hasta que se liquida finalmente la comunidad de bienes post ganancial que se crea entre ellos una vez se disuelve el matrimonio.[62]

La comunidad de bienes post ganancial es una comunidad de bienes ordinaria.[63] Sus comuneros, en este caso ex cónyuges, ostentan "una cuota abstracta sobre el

---

[59] 31 L.P.R.A. § 301 (1990). *Cf.* E. Vázquez Bote, Derecho Privado Puertorriqueño, Derecho de Familia, San Juan, 1993, T. XI, pág. 247. (Énfasis nuestro).

[60] 31 L.P.R.A. § 3621 (1990).

[61] Montalván v. Rodríguez, 161 D.P.R. 411, 416 (2004).

[62] *Íd.*

[63] Para una mejor exposición de la naturaleza de esta comunidad, *véanse* Pagán Hernández v. Miranda Fernández, 2009 T.S.P.R. 175, págs. 5-11; Díaz v. Aguayo, 162 D.P.R. 801, 808-810 (2004).

*totum* ganancial o sobre la masa, y no una cuota concreta sobre cada uno de los bienes".[64]    Esto es así independientemente de si el estado de indivisión de dicha comunidad post ganancial es o no prolongado, pues se trata, después de todo, de una masa en liquidación.[65]

Una comunidad de bienes post ganancial existe hasta que se liquida finalmente la sociedad legal de bienes gananciales y puede, por lo tanto, extenderse indefinidamente pues la acción para liquidar la cosa común nunca prescribe.[66]  No obstante, cabe mencionar que los ex cónyuges no están obligados a permanecer en la comunidad.[67]  Cualquiera de ellos puede pedir la división de la cosa común en cualquier momento.[68]

---

[64] Pagán Hernández v. Miranda Fernández, 2009 T.S.P.R. 175, pág. 9.

[65] Pagán Hernández v. Miranda Fernández, 2009 T.S.P.R. 175, pág. 9 (*citando a* J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Bosh, 1967, T. 4, Vol. 1, pág. 784).

[66] 31 L.P.R.A. § 5295 (1990); Montalván v. Rodríguez, 161 D.P.R. 411, 422 (2004).

[67] 31 L.P.R.A § 1279 (1990); Díaz v. Aguayo, 162 D.P.R. 801, 809 (2004); Montalván v. Rodríguez, 161 D.P.R. 411, 422 (2004).

[68] Díaz v. Aguayo, 162 D.P.R. 801, 809 (2004). Incluso, mientras exista la comunidad de bienes post ganancial, cualquiera de los cónyuges puede pedirle al tribunal que se nombre un administrador judicial. 31 L.P.R.A. § 1277 (1990); Montalván v. Rodríguez, 161 D.P.R. 411, 422 (2004). Además, cualquiera de los cónyuges podría ejercer su derecho de coadministrar los bienes y hasta interponer acciones de desahucio y reivindicación. Montalván v. Rodríguez, 161 D.P.R. 411, 422 (2004)

Presentada la demanda para liquidar y dividir la sociedad ganancial se procederá a la formación de inventario.[69] El inventario comprenderá numéricamente, para colacionarlas, las cantidades que, habiendo sido pagadas por la sociedad legal de gananciales, deban rebajarse del capital del marido o de la mujer. También se traerá a colación el importe de las donaciones o enajenaciones que deban considerarse ilegales o fraudulentas, conforme a lo dispuesto en el Artículo 1313 del Código Civil.[70]

---

(*citando a* <u>Soto López v. Colón</u>, 143 D.P.R. 282, 292 esc. 7 (1997)).

[69] 31 L.P.R.A. § 3691 (1990). El inventario de liquidación no tendrá lugar: (1) cuando uno de los cónyuges o sus causahabientes haya renunciado a sus efectos y consecuencias en tiempo hábil; (2) cuando la separación de bienes haya precedido a la disolución de la sociedad; (3) cuando la sociedad haya sido declarada nula a causa de la mala fe de uno de los cónyuges. 31 L.P.R.A. § 3691 (1990).

En cuanto a la formación del inventario, reglas sobre tasación y venta de bienes y demás que no se halle expresamente determinado en las disposiciones del Código Civil referentes a la sociedad legal de bienes gananciales, se observará lo indicado en las normas sobre aceptación de herencia a beneficio de inventario y derecho a deliberar. 31 L.P.R.A. § 1285 (1990). *Véase además* <u>Montalván v. Rodríguez</u>, 161 D.P.R. 411, 423-424 (2004) (*citando a* <u>Janer Vilá v. Tribunal Superior</u>, 90 D.P.R. 281, 300 (1964)).

[70] 31 L.P.R.A. § 3692 (1990). No se incluirán en el inventario los efectos que constituyan el lecho de que se usaban ordinariamente los esposos. Estos efectos, así como las ropas y vestidos de su uso ordinario, se entregarán al que de ellos sobreviva. 31 L.P.R.A. § 3693 (1990).

Pagadas las deudas, cargas y obligaciones de la sociedad, se liquidará y pagará el capital de ambos ex cónyuges hasta donde alcance el caudal inventariado.[71] Hechas las deducciones en el caudal inventariado, el remanente del mismo constituirá el haber de la extinta sociedad legal de bienes gananciales.[72]

B

La Regla 65(F) de Evidencia dispone lo siguiente:

Es admisible como excepción a la regla de prueba de referencia aunque el declarante esté disponible como testigo:

*(F) Récord del negocio o actividad.-* Un escrito hecho como récord de un acto, condición o evento si el escrito fue hecho durante el curso regular de un negocio, en o próximo al momento del acto, condición o evento, y el custodio de dicho escrito u otro testigo declara sobre su identidad y el método sobre su preparación, siempre que las fuentes de información, método y momento de su preparación fueran tales que indiquen su confiabilidad. El término "negocio" incluye además de negocio propiamente, una actividad gubernamental, profesión, ocupación, vocación u operación de instituciones, ya sea con o sin fines pecuniarios.[73]

---

[71] 31 L.P.R.A. § 3694 (1990).

[72] 31 L.P.R.A. § 3695 (1990). Las pérdidas o deterioro que hayan sufrido los bienes muebles de la propiedad de cualquiera de los cónyuges, aunque sea por caso fortuito, se pagarán de los bienes gananciales cuando los hubiere. Los daños sufridos en los bienes inmuebles no serán abonables en ningún caso. 31 L.P.R.A. § 3696 (1990). El remanente líquido de los bienes gananciales se dividirá por mitad entre los ex cónyuges o sus respectivos herederos. 31 L.P.R.A. § 3697 (1990).

[73] 32 L.P.R.A. Ap. IV, R.65 (F) (2001).

Los fundamentos de esta excepción a la regla general de exclusión de prueba de referencia descansan en razones de necesidad, confiabilidad, experiencia[74] y en el carácter rutinario del documento.[75] El texto de la Regla 65(F) de Evidencia, *supra*, contempla cuatro (4) requisitos: (1) que el escrito o récord haya sido hecho durante el curso regular del negocio; (2) que haya sido hecho en o próximo al momento del acto, condición o suceso a que se refiere el récord; (3) que el custodio del escrito o récord, o algún otro testigo, declare sobre su identidad y método de preparación; y (4) que las fuentes de información, método y momento de la preparación del récord sean tales que indiquen su confiabilidad.[76]

Según se desprende del lenguaje de la Regla 65(F) de Evidencia, *supra*, antes de poder admitir en evidencia un documento catalogado como récord de negocio es necesario sentar adecuadamente las bases para su admisión. Para ello, la propia Regla 65(F) requiere, como condición previa a la admisibilidad del documento, el testimonio de un testigo cualificado que testifique

---

[74] H. R. Stationary, Inc. v. E.L.A., 119 D.P.R. 129, 137 (1987).

[75] E.L. Chiesa Aponte, Tratado de Derecho Probatorio, San Juan, Publicaciones JTS, 2005, T. II, pág. 698.

[76] H. R. Stationary, Inc. v. E.L.A., 119 D.P.R. 129, 138 (1987). (Énfasis suplido).

sobre los tres (3) requisitos adicionales.[77]    A esos
efectos, el profesor E.L. Chiesa Aponte ha dicho lo
siguiente:

> La regla categóricamente exige que el custodio
> del récord u otro testigo competente
> testifique sobre la identidad del récord y el
> método de su preparación.   La idea es muy
> clara: exigir testimonio competente que
> permita al tribunal decidir si se satisfacen
> los requisitos establecidos en la regla.
>
> …
>
> …
>
> …
>
> La regla no exige más [sic] que un testigo,
> aunque lo ideal sería que declarara toda
> persona que contribuyera a establecer los
> requisitos que exige la regla para la admisión
> del récord.   Pero tampoco se trata de traer a
> todo participante, pues entonces no habría,
> tal vez, prueba de referencia que atender.   El
> testimonio del custodio del récord es
> suficiente pero no necesario.   Lo importante
> es que testifique alguien que conozca cómo se
> preparan los récords en el negocio
> correspondiente, aunque él no haya preparado
> ni supervisado el récord en controversia.   No
> es necesario que testifique la persona que
> originó la información.   Pero a pesar de la
> liberalidad con que se interpreta este
> requisito, **su incumplimiento acarrea la
> exclusión de la evidencia**….[78]

---

[77] H. R. Stationary, Inc. v. E.L.A., 119 D.P.R. 129, 139-
140 (1987).

[78] E.L. Chiesa Aponte, op cit., págs. 701-702 (*citando a*
H. R. Stationary, Inc. v. E.L.A., 119 D.P.R. 129 (1987);
United States v. Pelullo, 964 F.2d 193, 200 (3er. Cir.
1992)).   (Énfasis nuestro).

Debe notarse que entre la Regla 65(F) de Evidencia y su
homóloga en las Reglas de Evidencia del 2009, la Regla
805(F), hay cambios sustanciales.   Sobre este nuevo cuerpo
de reglas y sus cambios nos comenta el profesor E.L.

C

La Regla 43.2 de Procedimiento Civil indica que "[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos".[79] Cónsono con lo expresado anteriormente, en reiteradas ocasiones hemos resuelto que los tribunales apelativos no deben intervenir con las determinaciones de hechos del tribunal sentenciador a menos que exista un error manifiesto o que el tribunal sentenciador haya sido movido por prejuicio, parcialidad o pasión que nos mueva a intervenir.[80]

Esta norma de deferencia impone un respeto a la aquilatación de credibilidad de prueba que hace el Tribunal de Primera Instancia debido a que los foros

---

Chiesa Aponte que "[u]n cambio importante… es que ya no es absolutamente necesario el testimonio del custodio de los récords u otro testigo que declare para autenticarlos y explicar el momento y método de su preparación. Ahora, tal testimonio puede ser sustituido con `**una certificación que cumpla con las disposiciones de la Regla 902(K) o con algún estatuto que permita dicha certificación´**". E.L. Chiesa Aponte, Reglas de Evidencia de Puerto Rico 2009, San Juan, Publicaciones JTS, 2009, pág. 261. (Énfasis suplido).

[79] 32 L.P.R.A. Ap. III, R.43.2.

[80] Rivera Figueroa v. A.A.A., 2009 T.S.P.R. 162, pág. 11 (*citando a* Ramíres Ferrer v. Conagra Foods PR, 2009 T.S.P.R. 55; Trinidad v. Chade, 153 D.P.R. 280, 291 (2001); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984)). *Véanse además* Benítez Guzmán v. García Merced, 126 D.P.R. 302, 308 (1990); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985).

apelativos "sólo tenemos… récords mudos e inexpresivos".[81] Por ello, esas apreciaciones de prueba que hace el foro primario deben ser objeto de gran deferencia, pues dicho foro es el que se encuentra en la mejor posición para evaluar la credibilidad de un testigo.[82]

III

Como primer señalamiento de error la señora Muñiz Noriega indicó que el Tribunal de Apelaciones erró al determinar que las partes no adquirieron bienes durante el matrimonio y que el negocio de gomas era privativo del señor Muñoz Bonet. No le asiste la razón. Veamos.

A diferencia de lo alegado por la señora Muñiz Noriega, del expediente del caso de marras, en específico de la transcripción de la vista evidenciaria, no se desprende que las partes hayan adquirido bienes durante la vigencia de su matrimonio. Todo lo contrario. El testimonio de la parte demandante fue altamente contradictorio.

A preguntas de su abogado, el Lcdo. Fernando Nieves Camacho, la señora Muñiz Noriega testificó que el préstamo hipotecario de $42,750.00, fue asumido "para construir el negocio" de gomera.[83] Luego, durante el

---

[81] <u>Rivera Figueroa v. A.A.A.</u>, 2009 T.S.P.R. 162, pág. 11.

[82] *Íd.*

[83] *Véase* Apéndice, págs. 55-57.

contrainterrogatorio, la demandante testificó y aclaró que dicho préstamo había sido asumido para hacer la "estructura" donde operaba el negocio de gomas y que el terreno donde estaba ubicado dicho negocio pertenecía al padre del señor Muñoz Bonet.[84]

Sin embargo, a preguntas del licenciado Nieves Camacho, la señora Muñiz Noriega testificó patentemente que las partes no adquirieron bienes durante la vigencia del matrimonio.[85] Incluso, a preguntas del propio juez de instancia, quien inquirió nuevamente sobre este particular debido a que no escuchó la contestación inicial de la señora Muñiz Noriega, ésta reiteró su posición al contestar que la pareja no adquirió propiedades mientras estuvieron casados.[86]

La prueba documental admitida en evidencia tampoco demuestra que los ex cónyuges hayan adquirido bienes durante la vigencia de su matrimonio. Dicha prueba sólo consiste en documentos que evidencian las deudas asumidas por los cónyuges mientras estuvieron casados.

Consecuentemente, nos resulta forzoso concluir que las partes no adquirieron bienes durante la vigencia de su matrimonio. Al igual que el Tribunal de Apelaciones,

---

[84] *Íd.*, págs. 77-78.

[85] *Íd.*, págs. 53-54.

[86] *Íd.*, pág. 54.

entendemos que la señora Muñiz Noriega no nos ha puesto en posición de resolver lo contrario. El testimonio de la señora Muñiz Noriega no sostiene resultado diferente. Dicho testimonio no mereció credibilidad por parte del foro primario, quien es el foro que está en mejor posición para evaluar a los testigos, y por ello no creemos procedente intervenir con esta determinación.

Como segundo señalamiento de error la señora Muñiz Noriega indicó que el Tribunal de Apelaciones erró al indicar en su sentencia que la demandante no presentó prueba indicativa del valor del inventario y las ventas del negocio de gomas que opera el demandado. En específico, la parte demandante adujo que el estado financiero del señor Muñoz Bonet para el año 1998 constituye un récord de negocio, y que por ello, dicho documento es admisible bajo los preceptos de la Regla 65(F) de Evidencia, *supra*. Tampoco le asiste la razón. Veamos.

Como indicamos anteriormente, en H.R. Stationary, Inc. v. E.L.A.,[87] resolvimos que los requisitos para que un documento catalogado como récord de negocio sea admitido en evidencia son los siguientes: (1) que el escrito o récord haya sido hecho durante el curso regular del negocio; (2) que el escrito o récord haya sido hecho en

---

[87] 119 D.P.R. 129 (1987).

o próximo al momento del acto, condición o suceso a que se refiere el récord; (3) **que el custodio del escrito o récord, o algún otro testigo, declare sobre su identidad y método de preparación**; y (4) que las fuentes de información, método y momento de la preparación del récord sean tales que indiquen su confiabilidad.[88]

Como consecuencia, para que un récord de negocio sea admitido en evidencia la parte promotora de dicho documento tiene que sentar las bases para su admisión. En específico, la parte promotora del récord de negocio tiene que presentar el testimonio de un testigo cualificado que declare sobre los otros tres (3) requisitos adicionales, pues así lo exige la propia Regla 65(F), *supra*.[89]

En el caso de marras no surge del expediente que la parte demandante haya sentado las bases para que se admitiera en evidencia el estado financiero del señor Muñoz Bonet como un récord de negocio. En específico, de la transcripción de la vista evidenciaria no surge que algún testigo haya declarado sobre la identidad y método de preparación de dicho documento, mucho menos sobre su confiabilidad.[90]

---

[88] H.R. Stationary, Inc. v. E.L.A., 119 D.P.R. 129, 138 (1987). (Énfasis suplido).

[89] *Íd*. *Véase además* E.L. Chiesa Aponte, Tratado de Derecho Probatorio, San Juan, Publicaciones JTS, 2005, T. II, págs. 701-702.

En vista de lo anterior, no podemos avalar la posición de la parte demandante. Actuó correctamente el foro apelativo intermedio al resolver que el estado financiero del señor Muñoz Bonet para el año 1998 no es admisible en evidencia. Los requisitos exigidos por la Regla 65(F), *supra*, y su jurisprudencia interpretativa no fueron satisfechos.

Aún más, tampoco surge del expediente que la parte demandante haya ofrecido como prueba dicho estado financiero ni que haya "preservado su planteamiento mediante un señalamiento oportuno".[91] Por ello, concluimos que el Tribunal de Apelaciones tampoco cometió el segundo error señalado por al señora Muñiz Noriega, por lo que este Tribunal no debe considerar dicho estado financiero

---

[90] La señora Muñiz Noriega no especificó en su recurso a cuál negocio pertenece el récord en controversia, si al negocio de gomas o al banco que preparó dicho estado financiero (Westernbank). No obstante, nuestra conclusión sobre la inadmisibilidad de dicho documento se sostiene independientemente de si catalogamos el estado financiero del señor Muñoz Bonet como un récord del negocio de gomas o como un récord de negocio del Westernbank.

Nótese que aún cuando la definición de "negocio" contenida en la propia Regla 65(F) comprende tanto al negocio de gomas como al Westernbank, lo cierto resulta ser que la única persona que testificó durante la vista evidenciaria lo fue la señora Muñiz Noriega y su testimonio se limitó a declarar sobre las deudas asumidas por el matrimonio durante su vigencia. No se extendió a declarar sobre la confiabilidad del récord de negocio, mucho menos sobre la identidad y método de preparación del documento. *Véase* Apéndice, págs. 6, 51-85.

[91] *Véase* Apéndice, págs. 11-12.

como prueba del valor del inventario y equipo del negocio de gomera ni del volumen de ventas de dicho negocio.

Como tercer señalamiento de error la señora Muñiz Noriega indicó que el Tribunal de Apelaciones erró al no concederle los créditos que la ley contempla por lo siguiente: el pago con dinero ganancial de hipoteca sobre bien privativo del demandado; el pago con dinero ganancial de préstamos asumidos por él luego de radicada la demanda de divorcio; la compra de un automóvil que el señor Muñoz Bonet le regaló a una tercera persona; y por el valor del inventario y equipo del negocio de gomas, entre otros. Le asiste la razón, en parte. Veamos.

En cuanto al primer crédito reclamado, pago con dinero ganancial de la hipoteca sobre bien privativo del señor Muñoz Bonet, basta con señalar que esta deuda hipotecaria fue contraída el 29 de marzo de 1996, fecha en que las partes aún estaban casadas.[92] Por ello, y en virtud de la presunción de ganancialidad que recae sobre dicha deuda hipotecaria, ésta constituye una obligación ganancial y es la sociedad legal de bienes gananciales quien tiene el deber de pagarla.[93] La señora Muñiz Noriega no presentó evidencia que demostrara que esta deuda hipotecaria fue contraída para el beneficio exclusivo de

---

[92] *Íd.*, pág. 3.

[93] 31 L.P.R.A. § 3661 (1990).

uno de los cónyuges, que no sirvió el interés de la familia o que fue efectuada con el ánimo de perjudicarla o defraudarla.[94]

No obstante, lo anterior no dispone del asunto. La señora Muñiz Noriega adujo que parte del dinero obtenido del préstamo hipotecario fue utilizado para hacerle mejoras al hogar conyugal, el cual es un bien privativo del señor Muñoz Bonet. En específico, la demandante testificó que $10,000.00, de los $42,750.00, del préstamo hipotecario fueron utilizados para añadirle "un baño al cuarto, al que consideramos el master y se hizo una caja de agua y se le añadieron unas puertas".[95]

En vista de lo anterior, resolvemos que el Tribunal de Apelaciones erró al no considerar estas mejoras como expensas útiles hechas al bien privativo de uno de los cónyuges. No surge del expediente que el señor Muñoz Bonet haya impugnado el testimonio de la señora Muñiz Noriega en cuanto a la realización de estas mejoras, como tampoco surge que el demandado haya presentado evidencia que probara lo contrario a lo alegado por la Sra. Muñiz Noriega. Consecuentemente, el foro apelativo intermedio incidió al no aplicar la normativa esbozada en el primer

---

[94] W.R.C. Properties, Inc. v. Santana, 116 D.P.R. 127, 134-135 (1985); Banco de Ahorro del Oeste v. Santos, 112 D.P.R. 70, 77-78 (1982).

[95] Véase Apéndice, pág. 61.

párrafo del Artículo 1304 del Código Civil y al no otorgar el crédito correspondiente según la norma establecida en Calvo Mangas v. Aragonés Jiménez, *supra*.[96]

En cuanto al crédito reclamado por el préstamo de $10,695.00, alegadamente utilizado para la compra de un automóvil que el señor Muñoz Bonet le regaló a una tercera persona, resolvemos que el Tribunal de Apelaciones actuó correctamente al no conceder el crédito correspondiente. Del expediente del caso de marras no surge evidencia que pruebe las alegaciones de la señora Muñiz Noriega.[97] Sólo surgen declaraciones contradictorias e incompletas, las cuales no demuestran perjuicio alguno en contra de la sociedad legal de bienes gananciales.[98]

A igual conclusión llegamos en cuanto a los créditos reclamados por el valor del inventario y equipo del negocio de gomas. El documento presentado por la señora Muñiz Noriega para probar el valor del inventario y equipo del negocio de gomas, catalogado como un récord de negocio, no fue admitido en evidencia. Esto, debido a que la parte demandante no cumplió con los requisitos antes expuestos de la Regla 65(F) de Evidencia, *supra*. Por

---

[96] Para una exposición sobre la aplicación del primer párrafo del artículo 1304 del Código Civil, *véanse* Calvo Mangas v. Aragonés Jiménez, 115 D.P.R. 219, 224-227 (1984); O.V. Torralba Soriano, op cit., págs. 111-112.

[97] *Véase* Apéndice, pág. 4.

[98] *Íd.*, págs. 11-12 y 16-19.

ello, el Tribunal de Apelaciones actuó correctamente al no conceder el crédito reclamado por el valor del inventario y equipo del negocio de gomas, pues dicho documento no puede ser considerado como medio probatorio de estas partidas.

Finalmente, en cuanto a los créditos reclamados por las deudas que el señor Muñoz Bonet contrajo luego de presentada la demanda de divorcio, resolvemos que el Tribunal de Apelaciones incidió al no otorgar dichos créditos. De la prueba documental presentada por la señora Muñiz Noriega, específicamente del informe de crédito del demandado, surgen varias deudas que fueron contraídas luego de radicada la demanda de divorcio y pagadas antes que adviniera final y firme la sentencia.[99]

Además, el que la extinta sociedad de gananciales no haya adquirido bienes durante su vigencia no impide ni limita el derecho de la señora Muñiz Noriega a percibir los créditos correspondientes. El patrimonio de la sociedad ganancial no se limita a los bienes que se adquieren durante su vigencia, sino que también comprende los bienes que se obtienen por la industria, sueldo o trabajo de cualquiera de los cónyuges.[100] En ese sentido, de la prueba documental presentada por la señora Muñiz

---

[99] Los posibles créditos en controversia se encuentran en las páginas 46-47 del Apéndice.

[100] 31 L.P.R.A. § 3641 (1990).

Noriega surgen varias deudas contraídas por el señor Muñoz Bonet luego de radicada la demanda de divorcio.[101]   Tales deudas, en virtud del Artículo 101 del Código Civil, *supra*, son de exclusiva responsabilidad del demandado.   De igual manera, surge del expediente que dichas deudas fueron pagadas antes de recaída la sentencia de divorcio, por lo que el pago de dichas deudas debe presumirse ganancial.   A esos efectos, el señor Muñoz Bonet no presentó evidencia que derrotara la presunción de ganancialidad establecida por el Artículo 1307 del Código Civil, *supra*.   En otras palabras, el Sr. Muñoz Bonet no demostró que el pago de dichas deudas fue efectuado con dinero privativo de su pertenencia.

IV

Por los fundamentos antes expuestos, revocamos la Sentencia emitida por el Tribunal de Apelaciones en todo lo que es incompatible con los pronunciamientos aquí vertidos.[102]   Devolvemos el caso al Tribunal de Primera Instancia para que celebre una vista en donde se dilucide

---

[101] *Véase* Apéndice, págs. 46-47.

[102] Rivera Rodríguez v. Rivera Reyes, 168 D.P.R. 193, 214 (2006).

la cantidad de los créditos que deben ser otorgados a la señora Muñiz Noriega a tenor con lo aquí pautado.


*Efraín E. Rivera Pérez*
*Juez Asociado*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Nereida Muñiz Noriega

    Demandante Peticionaria

          v.                  AC-2008-0028

Héctor D. Muñoz Bonet

    Demandado Recurrido

SENTENCIA

San Juan, Puerto Rico, a 29 de enero de 2010.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte integra de la presente, revocamos la Sentencia emitida por el Tribunal de Apelaciones en todo lo que es incompatible con los pronunciamientos aquí vertidos. Devolvemos el caso al Tribunal de Primera Instancia para que celebre una vista en donde se dilucide la cantidad de los créditos que deben ser otorgados a la señora Muñiz Noriega a tenor con lo aquí pautado.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disiente por entender que se debió confirmar la sentencia emitida por el Tribunal de Apelaciones por éste haber aplicado correctamente al caso de autos la normativa vigente establecida por este Tribunal. La Jueza Asociada señora Rodríguez Rodríguez no interviene.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo