ROSARIO CALVO MANGAS, demandante y recurrida, *v.* VÍCTOR M. ARAGONÉS JIMÉNEZ, demandado y recurrente.

*Número:* R-83-237      *Resuelto:* 29 de marzo de 1984

*Elmer Ramírez Vincenty*, abogado del recurrente; *Hermes Acevedo Lebrón*, abogado de la recurrida.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

En 1963 Víctor M. Aragonés Jiménez, siendo soltero, adquirió en Añasco dos solares con sus respectivas estructuras. Satisfizo $3,000 por cada uno. Tres años más tarde contrajo matrimonio con Rosario Calvo Mangas. Durante su vigencia destruyeron una de las casas y construyeron una nueva. En el otro inmueble sobre la primera planta de hormigón añadieron una segunda de madera. Además adquirieron varios bienes e, inclusive, establecieron un negocio comercial conocido como "Sandra Shop". En 1980 se divorciaron.

La Señora Calvo solicitó la liquidación de la sociedad de gananciales. Un contador partidor rindió un informe que

oportunamente el tribunal de instancia acogió en su sentencia. A petición de Aragonés Jiménez revisamos.

## I

El primer señalamiento gira en torno a los dos inmuebles mencionados. El contador partidor les asignó un valor de $60,000 y $33,000. Esa apreciación corresponde a su valor al momento de la liquidación. Sobre este extremo no hay controversia. La hay sobre el monto del crédito a que tiene derecho Aragonés Jiménez por haberlos adquirido antes del matrimonio. El contador partidor decidió que era el costo al tiempo de su adquisición. Incidió.

El precepto legal que gobierna la fiel solución del caso y bajo el cual examinamos separadamente cada inmueble es el Art. 1304 del Código Civil. Reza:

> Las expensas útiles, hechas en los bienes peculiares de cualquiera de los cónyuges mediante anticipaciones de la sociedad o por la industria del marido o de la mujer, son gananciales.
>
> Lo serán también los edificios construidos durante el matrimonio en suelo propio de uno de los cónyuges, abonándose el valor del suelo al cónyuge a quien pertenezca. 31 L.P.R.A sec. 3644.

A— *Casa en Calle Victoria núm. 30*

Preliminarmente hemos de dilucidar si este inmueble es ganancial o privativo.

En su verdadera dimensión, el segundo párrafo del citado artículo([1]) consagra la denominada "accesión al revés o la antiaccesión". J. M. Reyes Monterreal, *El Régimen Legal de Gananciales*, Madrid, Ed. Gráficas Menor, 1962, pág. 154. Es una excepción al principio general de la

---

([1]) Fue eliminado en el nuevo Código Civil español. Véase J. Castán Tobeñas, *Derecho Civil español, común y foral*, 10ma ed., Madrid, Ed. Reus, 1983, T. V, Vol. I, pág. 385. En Francia no existe disposición análoga, pues la norma es que las edificaciones en terrenos privativos de un cónyuge son de la misma naturaleza que el solar. Véase A. Colin y H. Capitant, *Curso Elemental de Derecho Civil*, 3ra ed., Madrid, Ed. Reus, 1955, T. VI, págs. 198–199.

accesión de *superficies solo cedit* establecido en el Art. 294 del Código Civil.([2]) *Piazza v. Registrador*, 78 D.P.R. 301, 307 (1955); *Salazar v. El Registrador*, 27 D.P.R. 63, 66-67 (1919); J. M. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Ed. Reus, 1969, T. IX, pág. 710, 1er párr. Como norma general las edificaciones son accesorias al suelo. Bajo esta premisa, si se construyen a costa de la sociedad legal de gananciales serían del cónyuge dueño del solar conforme el primer párrafo del precepto. Sin embargo, según su segundo párrafo estos edificios son gananciales y se abona el valor del terreno al cónyuge propietario del suelo. Manresa, *op. cit.* O sea, la sociedad de gananciales, que es la propietaria de la edificación, adquiere el terreno.

Resolvemos que este inmueble es ganancial. La demolición de la estructura original y edificación de una nueva en nada altera esta conclusión si, como ocurrió, la demolición fue total.([3]) J. García Granero, *Edificación con dinero ganancial en suelo propio de uno de los cónyuges*, 34 Rev. Der. Privado 193, 211 (1950); Manresa, *op. cit.*, pág. 712.

▮ Aclarado el carácter ganancial del inmueble subsiste la interrogante: ¿en qué momento se tomará para valorizar el crédito del cónyuge dueño del solar? La respuesta exige precisar cuándo es que la sociedad adquiere el suelo para entonces fijar su valor. García Granero, *op. cit.*, págs. 213-215.

La doctrina admite que caben tres probabilidades: (1) al comienzo de la obra; (2) al terminarse el edificio; o (3) al liquidarse la sociedad de bienes. García Granero, *op. cit.*,

---

([2]) Dispone:

"Lo edificado, plantado o sembrado en predios ajenos y las mejoras o reparaciones hechas en ellos, pertenecen al dueño de los mismos, con sujeción a lo que se dispone en las secciones siguientes." 31 L.P.R.A. sec. 1161.

([3]) Si se conserva parte de la edificación antigua, la cuestión debe resolverse caso a caso. A priori, de manera inflexible no puede establecerse una regla general. J. García Granero, *Edificación con dinero ganancial en suelo propio de uno de los cónyuges*, 34 Rev. Der. Privado 193, 211 (1950); E. Vaz Ferreira, *Tratado de la Sociedad Conyugal*, 2da ed., Montevideo, Ed. Martín Bianchi, 1963, T. I, pág. 330.

págs. 213-214. Este autor con buen juicio descarta la primera. Razona que el citado Art. 1304 aduce y se refiere a "edificios construidos". Entiende que la terminación de la construcción es condición sine qua non para su aplicación.

Respecto a la tercera posibilidad —al tiempo de liquidarse la sociedad— reconoce varios argumentos a su favor. Señala que teóricamente se puede argüir que el traspaso se realiza al efectuarse la indemnización. Y, también, que no es hasta que se liquida la sociedad que se conoce si hay pérdidas o ganancias, esto es, si realmente existen bienes gananciales. Aun así, también prescinde de ella porque en su análisis final le convencen las razones, cuantitativas y cualificativas, que existen a favor de la segunda.

A tal efecto, en apoyo de la segunda alternativa, como razones de peso aduce que: (1) la construcción del edificio es en sí la causa de la transferencia; (2) en su dinámica conceptual operativa, la figura jurídica que aflora es la de una compraventa con precio aplazado, pues no resulta necesario la entrega previa o coetánea del precio del solar para la adquisición de su dominio; y (3) aunque cierta y realmente no puede determinarse si el edificio es ganancial hasta la liquidación de la sociedad, ese mismo fenómeno ocurre, en general, con todo bien adquirido durante el matrimonio y ello no impide que la norma legislativa repute ganancial tales adquisiciones. García Granero *op. cit.*, págs. 213-215. A tono con ese razonamiento concluye que el valor del solar a los efectos del crédito que tiene el cónyuge propietario del suelo cuando se liquide la sociedad, será cuando se terminó la construcción de la edificación. Íd., pág. 215. Con esta opinión coinciden varios autores. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1967, T. IV, Vol. I, pág. 673; Q. M. Scaevola, *Código Civil*, 2da ed., Madrid, Ed. Reus, 1967, T. XXII, pág. 429; E. Vaz Ferreira, *Tratado de la Sociedad Conyugal*, 2da ed., Montevideo, Ed. Martín Bianchi, 1963, T. I, págs, 329-330. En contra, *vide* A. De Cossío, *La Sociedad de Gananciales,* en *Tratado práctico*

*y crítico de Derecho Civil,* Madrid, Ed. Inst. Nac. Est. Jur., 1963, T. 50, Vol. I, pág. 74.

Estimamos que la posición mayoritaria es la más correcta y justiciera. [4] Por lo tanto, erró el ilustrado tribunal a quo al dejar de reconocer y adjudicar, como crédito al que tenía derecho Aragonés Jiménez, el valor del solar *al momento* en que se terminó de construir la nueva edificación. En este particular la sentencia será modificada.

B— *Casa en la Calle Victoria núm. 62*

Nuevamente, dependiendo de si se aplica el primer o segundo párrafo del Art. 1304 estaremos ante un bien privativo o ganancial. Ello determinará a quién pertenece ese crédito. Como hechos esenciales valga recordar que la primera planta de la edificación era de hormigón. Fue adquirida antes del matrimonio por el recurrente. La segunda se construyó vigente el matrimonio y es de madera.

La glosa considera, como requisitos necesarios para que aplique el segundo párrafo, [5] que las edificaciones sean obras independientes y principales y se construyan de nueva planta. García Granero, *op. cit.,* pág. 210; J. L. La Cruz Berdejo y F. Sancho Rebullida, *Derecho de Familia,* 3ra ed., Barcelona, Ed. Bosch, 1978, Vol. I, pág. 234; B. C. Sánchez Cañete, *El artículo 1.404 del Código Civil y las declaraciones de obra nueva,* 27 Rev. C. Der. Inmob. 785, 791 (1954); Puig Brutau, *op. cit.,* pág. 669; Manresa, *op. cit.,* pág. 711. Ello excluye, por lo tanto, este tipo de construcción.

Una edificación como la de autos, segunda planta, no encaja en el segundo párrafo del citado Art. 1304. A este tipo de construcción le aplica el primero. Se considera más bien una expensa útil. Sánchez Cañete, *op. cit.,* pág. 796; Man-

---

[4] Lo expresado al respecto en contrario en *Espéndez* v. *Vda. de Espéndez,* 85 D.P.R. 437, 445 (1962), fue un *dictum* y por lo tanto no nos obliga.

[5] Son varios los requisitos establecidos para que aplique esta disposición. Véase García Granero, *op. cit.,* págs. 208-213. En el caso de autos sólo está envuelto el que exige que se trate de una edificación.

resa, *op. cit.*, pág. 708. Por ende, lógicamente todo el bien, tanto el solar como el edificio —ambas plantas— siguen siendo privativos.

■ Esta circunstancia no representa un destierro absoluto para la sociedad de gananciales. Aunque se argumenta que existe una cotitularidad o condominio entre el cónyuge propietario y la sociedad, la doctrina favorece concederle solamente un derecho de crédito. Puig Brutau, *op. cit.*, pág. 707; Scaevola, *op. cit.*, pág. 424; J. Castán Tobeñas, *Derecho Civil español, común y foral*, 9na ed., Madrid, Ed. Reus, 1976, T. V, Vol. I, pág. 368. Véase además la Sentencia Núm. 122 del Tribunal Supremo de España de 25 de mayo de 1950.

Esa solución implica decidir si dicho crédito es por el dinero gastado en la expensa o el aumento en valor del bien mejorado. A su vez, esta última alternativa conlleva precisar cuál ha de ser el momento en el que se computa este valor. (⁶) D. Espín Cánovas, *Manual de Derecho Civil Español*, 7ma ed., Madrid, Ed. Rev. Der. Privado, 1982, Vol. IV, págs. 274-275.

Existen varias teorías. Se ha expresado que sólo se tiene derecho a la suma ganancial invertida o al valor del trabajo realizado por los cónyuges y no al aumento en el valor del bien privativo que la expensa le ha proporcionado. Puig Brutau, *op. cit.*, pág. 664; Castán, *op. cit.*, pág. 368; Scaevola, *op. cit.*, pág. 424; A. M. Borrel y Soler, *Derecho Civil Español*, Barcelona, Ed. Bosch, 1954, T. IV, págs. 430-431; F. Puig Peña, *Compendio de Derecho Civil Español*, 3ra ed., Madrid, Eds. Pirámide, 1976, T. V, pág. 154; De Cossío, *op.*

---

(⁶) Esta incógnita ha sido resuelta en el nuevo texto del Código Civil español al incorporarse el apartado 2 del Art. 1359 que establece:

"No obstante, si la mejora hecha en bienes privativos fuese debida a la inversión de fondos comunes o a la actividad de cualquiera de los cónyuges, la sociedad será acreedora del aumento del valor que los bienes tengan como consecuencia de la mejora, al tiempo de la disolución de la sociedad o de la enajenación del bien mejorado." Citado en D. Espín Cánovas, *Manual de Derecho Civil Español*, 7ma ed., Madrid, Ed. Rev. Der. Privado, 1982, Vol. II, pág. 275.

*cit.*, pág. 72. En circunstancias apropiadas, pero sin elaborarse, esta solución la adoptamos en *García* v. *Montero Saldaña*, 107 D.P.R. 319, 326-328 (1978) y *Sucn. Santaella* v. *Srio. de Hacienda*, 96 D.P.R. 442, 448-449 (1968).

Por otro lado, Manresa señala que está de acuerdo en que sea el dinero invertido lo que se le deba a la sociedad cuando se haya realizado el gasto. Ahora bien, si la mejora es por el trabajo o la industria de los cónyuges, o una parte es del caudal de la sociedad y la otra se debe a ese trabajo, o se desconoce la suma invertida, el crédito ganancial debe ser el aumento en valor del bien privativo. Manresa, *op. cit.*, págs. 45-46.

Otra posición, adoptada en la legislación de varios países, reclama que sea el aumento en valor del bien. Véase Royo Martínez, *Derecho de Familia*, Sevilla, 1949, pág. 202, según citado por O. V. Torralba Soriano, *Las expensas útiles del apartado primero del artículo 1.404 del Código Civil*, 46 Rev. Der. Inmob. 93, 111-112 n. 36 (1970); el Art. 1.485 del Código de Venezuela y el núm. 60 del Art. 1.1916 del Código de Uruguay, según citados por Manresa, *op. cit.*, pág. 708.

Todos estos comentaristas y tratadistas examinan muy brevemente la cuestión. Frente a este tratamiento subsiste la tesis de Torralba Soriano, *op. cit.*, quien la discute ampliamente y sustenta una posición distinta. Este autor objeta la doctrina de que el crédito sea por lo gastado, porque puede conducirse a un resultado injusto cuando la mejora se ha deteriorado y no produce un aumento. En cuanto a la solución de que sea el incremento en valor, se opone. No sería justo para el cónyuge propietario cuando el aumento es mayor que lo gastado y se debe, en por lo menos parte, al propio bien. Sobre esta posición señala además que choca con el principio *accesorium sequitur principale* en el caso de que el aumento en valor sea considerable.

También descarta otra posibilidad. Aquella basada en el Art. 382 del Código Civil —Art. 453 español— (⁷) mediante la

---

(⁷) El Art. 382 dispone:

cual se consideraría al cónyuge propietario como poseedor de buena fe a escoger entre pagar los gastos útiles y el aumento en valor. Aduce como razón de mayor peso que el crédito se limitará como máximo a lo gastado, pues si el aumento en valor excede esta suma, el propietario optará por el importe de lo invertido.

Ante estas opciones, propone la tesis del aumento en el valor con ciertas modificaciones. Torralba nos señala que debe distribuirse el aumento en valor entre el cónyuge. propietario y la sociedad de gananciales en proporción al valor del bien y al costo de la mejora al momento en que ésta se hizo. Como ventaja apunta que la sociedad tendría interés en hacer las mejoras y éstas se considerarían una buena inversión si se le da participación adecuada en el aumento en valor. Otra razón favorable es que tal solución es más consistente con la razón de la gananciabilidad pues, según ésta, todos los beneficios y aumentos en valor por el esfuerzo o trabajo de los cónyuges deben ser gananciales.

De todas las posiciones señaladas, la última es la más justa y correcta en nuestro ordenamiento jurídico. Toma en cuenta el interés de que la sociedad de gananciales se beneficie de sus inversiones, estimula que las haga y a la vez no perjudica al cónyuge propietario. Éste siempre retiene su derecho a percibir el incremento en valor que tiene su bien, independientemente de la mejora.

Debe modificarse la sentencia recurrida a estos efectos y hacerse el ajuste correspondiente.

## II

El segundo planteamiento versa sobre el valor concedido al negocio "Sandra Shop" localizado en el inmueble de la

---

"Los gastos necesarios se abonan a todo poseedor; pero sólo el de buena fe podrá retener la cosa hasta que se los satisfagan.

"Los gastos útiles se abonan al poseedor de buena fe con el mismo derecho de retención, pudiendo optar el que le hubiese vencido en su posesión, por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa." 31 L.P.R.A. sec. 1468.

Calle Victoria núm. 30, adjudicádole a la recurrida Calvo Mangas. El contador partidor sumó el inventario de mercadería, los muebles y enseres y las cuentas por cobrar y le restó las cuentas a pagar. Aragonés Jiménez alega que se debió determinar e incluir los beneficios que la recurrida Calvo Mangas devengó desde el divorcio hasta su liquidación mientras ella estuvo en exclusiva posesión del mismo y la plusvalía del negocio (*good will*) como un activo.

Sobre el primer aspecto, es claro, según los Arts. 105 y 1315 del Código Civil, 31 L.P.R.A. secs. 381 y 3681, que una vez el matrimonio es disuelto por sentencia de divorcio, concluye la sociedad. *García López* v. *Méndez García*, 102 D.P.R. 383, 395 (1974); *Vega* v. *Tossas*, 70 D.P.R. 392, 395 (1949). Al terminarse dicha sociedad, surge una comunidad de bienes ordinarios entre los ex cónyuges que se rige, a falta de contrato o disposiciones especiales, por las normas de dicha figura jurídica establecidas en los Arts. 326 al 340 del Código Civil, 31 L.P.R.A. secs. 1271–1285. *García López* v. *Méndez García*, supra, pág. 395. Véase además, *García* v. *Montero Saldaña*, supra, págs. 331–332.

Al acudir al Art. 327 del Código Civil, 31 L.P.R.A. sec. 1272, notamos que cada comunero participa en los beneficios y las cargas de la comunidad en proporción a su cuota. En casos como el de autos, la participación de los comuneros —ex esposos— es por partes iguales. Art. 1322, Código Civil, 31 L.P.R.A. sec. 3697. El recurrente Aragonés Jiménez, en principio, tiene derecho a participar en la mitad de esos beneficios.

Ahora bien, de los autos surge que en la sentencia de divorcio se condenó al recurrente Aragonés Jiménez a pagar una pensión alimenticia de $400 más todos los beneficios que se devengaran del negocio "Sandra Shop" hasta que se liquidara la sociedad. Por esta razón el contador partidor estimó que el recurrente no tenía razón en su planteamiento de que tales beneficios debieron formar parte del caudal ganancial. Incidió. Una vez se disuelve el matrimonio, y

hasta la liquidación de la sociedad, los alimentos de los hijos se reparten entre los padres en proporción a su caudal en los bienes gananciales. *López Martínez* v. *Yordán*, 104 D.P.R. 594, 597 (1976). Si uno paga en exceso de lo que le correspondía, tiene un crédito a su favor por ese excedente. Véase *López Martínez* v. *Yordán*, supra, págs. 597-598. En este sentido el informe del contador partidor es erróneo. No toma esta norma en consideración. Deben hacerse también los cómputos correspondientes y modificarse la sentencia.

Resta decidir si procede incluir el valor comercial desarrollado (*good will*) como un activo del negocio de las partes, y que según vimos, le fue adjudicado exclusivamente a la recurrida Calvo Mangas. Anteriormente, sin discusión, hemos aceptado que es un activo. Véanse *Janer Vilá* v. *Tribunal Superior*, 90 D.P.R. 281 (1964); *Yumet* v. *Tribunal Superior*, 80 D.P.R. 680, 699-701 (1958); *Sucn. González* v. *Roque González & Cía.*, 33 D.P.R. 569 (1924).

Existe gran debate sobre lo que la doctrina denomina *empresa*. Es un concepto no reglado sistemáticamente por nuestro Derecho positivo.[8] Ante esta laguna la doctrina científica ha intentado construir una teoría jurídica y como consecuencia se han elaborado varias tesis sobre su naturaleza jurídica.[9] No hemos detectado, como tal, una posición mayoritaria. Existe confusión hasta en la terminología que se usa. Véase E. Langle y Rubio, *Manual de Derecho Mercantil Español*, Barcelona, Ed. Bosch, 1954, T. II, págs. 31-37.

---

[8] Existen varias disposiciones dispersas en nuestras leyes que se refieren a la empresa. Véanse, por ejemplo, los Arts. 201 y 269 del Código de Comercio, 10 L.P.R.A. secs. 1573 y 1773 y el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142. Igual situación existe en España. Véase M. De la Cámara, *Estudios de Derecho Mercantil*, 2da ed., Jaén, España, Ed. Der. Financiero, 1977, T. I, Vol. 1, págs. 13-23. Donde único hemos encontrado un intento de reglamentarla es en Italia. Véanse los Arts. 2082 y 2555 del Código Civil italiano de 1942.

[9] Para una explicación de éstas, véanse De la Cámara, *op. cit.*, págs. 8-13; J. Garrigues, *Curso de Derecho Mercantil*, 7ma ed., Madrid, Ed. Aguirre, 1976, Vol. I, págs. 168-173; D. A. Calvo Alfageme, *La empresa mercantil como objeto de negocios jurídicos*, 1 Anales de la Academia Matritense del Notariado 511, 524-533 (1945).

■ Para fines decisorios no es menester refrendar una de esas posiciones. Se acepta que al valorar una empresa debe incluirse no sólo el activo neto del balance contabilizado, sino también los elementos que por su naturaleza no pueden ser estimados en ese balance y que completan su verdadero valor. C. Massó Escofet, *Criterios y métodos de valoración del fondo de comercio*, 58 Rev. Jur. Cataluña 212 (1959); Sentencia Núm. 18 del Tribunal Supremo de España de 13 de enero de 1944, 5 Rev. Gen. Leg. Jur. 136 (1944). La doctrina en general acepta la existencia, entre los elementos integrantes de la empresa aquí pertinentes, de las llamadas "relaciones materiales de valor económico". A. Polo Díez, *Valoración del fondo de comercio*, 58 Rev. Jur. Cataluña 201, 202 (1959). También se les conoce como las "relaciones de hechos". J. Garrigues, *Curso de Derecho Mercantil*, 7ma ed., Madrid, Ed. Aguirre, 1976, Vol. I, págs. 193-194. Estas son *las expectativas* y *la clientela*. Aunque también existen diferencias en la doctrina sobre su concepto y naturaleza, las examinaremos a base del consenso general.

Primeramente, *las expectativas* son las perspectivas de obtener ciertos beneficios a base de la organización de la empresa y de las circunstancias favorables y consecuencias derivadas de esa organización. Garrigues, *op. cit.*, pág. 194; Langle y Rubio, *op. cit.*, pág. 38; F. Soto Nieto, *El traspaso de locales de negocio*, Barcelona, Ed. Nereo, 1968, pág. 23. También se le conoce como aviamiento,[10] *achalandage*, *good will* y *chancen*. Langle y Rubio, *op. cit.*, pág. 37. Las diversas teorías sobre su naturaleza jurídica coinciden en reconocer su valor patrimonial. R. Uría, *Derecho Mercantil*,

---

[10] Este término fue usado en el siglo XV por el Cardenal de Lucca y la ciencia italiana moderna lo ha resucitado. R. Gay de Montellá, *Elementos constitutivos del fondo de comercio como valor incorporal*, 58 Rev. Jur. Cataluña 206, 209 (1959). Aunque hay autores que sostienen que las expectativas y el aviamiento son distintos, en general, se equiparan los conceptos. Véanse: F. Soto Nieto, *El traspaso de locales de negocio*, Barcelona, Ed. Nereo, 1968, pág. 23; E. Langle y Rubio, *Manual de Derecho Mercantil Español*, Barcelona, Ed. Bosch, 1954, T. II, págs. 37-40.

12ma ed., Madrid, Ed. Aguirre, 1982, pág. 38; R. Gay de Montellá, *Elementos constitutivos del fondo de comercio como valor incorporal*, 58 Rev. Jur. Cataluña 206, 209 (1959); Soto Nieto, *op. cit.*, pág. 22; Langle y Rubio, *op. cit.*, págs. 38–39.

Por otro lado, *la clientela* se define como el conjunto de personas que de hecho mantienen relaciones continuas con la empresa en demanda de servicios o bienes. Garrigues, *op. cit.*, pág. 193; Langle y Rubio, *op. cit.*, pág. 40; D. A. Calvo Alfageme, *La empresa mercantil como objeto de negocios jurídicos*, 1 Anales de la Academia Matritense del Notariado 511, 522 (1945). Es el resultado y la manifestación externa del aviamiento. Aunque no existe un derecho a ella —porque no es susceptible de dominio jurídico— ciertamente es una noción jurídica y un valor económico. Garrigues, *op. cit.*, pág. 193; Polo Díez, *op. cit.*, pág. 205.

El problema surge al tratar de valorizar estos elementos. Gay de Montellá, *op. cit.*, pág. 210; Massó Escofet, *op. cit.*, págs. 212-213. Reconocemos que existen varios métodos.[11] Sin embargo, en el caso de autos, el récord está huérfano y no hubo prueba sobre cuál utilizar, y por ende, adjudicar. En justicia debe devolverse el caso a instancia para que dicho foro resuelva el método y base a usarse, y claro está, el valor, si alguno, que tienen estos elementos en el establecimiento comercial aquí envuelto.

*Se dictará sentencia en la que se devuelva el caso al tribunal de instancia, para la continuación de procedimientos que no sean incompatibles con esta opinión.*

El Juez Presidente Señor Trías Monge y el Juez Asociado Señor Rebollo López concurren en el resultado sin opinión.

---

[11] Véanse como ejemplos, los señalados en el Art. 3 de la Ley de Contratos de Distribución, Ley Núm. 75 de 24 de junio de 1964 (10 L.P.R.A. sec. 278b); *Yumet* v. *Tribunal Superior*, 80 D.P.R. 680, 700 n. 8 (1958); C. Massó Escofet, *Criterios y métodos de valoración del fondo de comercio*, 58 Rev. Jur. Cataluña 212, 213-214 (1959); T. Watkins, *What Price Good Will*, 42 U. Det. L.J. 531 (1965); H. Kohn, *Valuation of Good Will*, 14 W. Reserve L. Rev. 207 (1963).