ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI-ESPECIAL

| ZULMA VIERA MALDONADO | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla |
|---|---|---|
| APELANTE | | |
| v. | KLAN202400289 | Civil Núm. AG2019CV01805 |
| JOSÉ CARLOS RÍOS DÍAZ | | Sobre: División comunidad de bienes; Pensión excónyuge; cobro de |
| APELADO | | dinero |

Panel integrado por su presidenta, la jueza Ortiz Flores, el juez Rivera Torres, la jueza Rivera Pérez y el juez Campos Pérez

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de agosto de 2024.

Comparece la señora Zulma Viera Maldonado (Sra. Viera Maldonado; apelante) ante este foro apelativo mediante el recurso de epígrafe y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI) el 25 de enero de 2024 y notificada al día siguiente, 26 de enero de 2024. En dicho dictamen el TPI declaró No Ha Lugar la demanda enmendada presentada por la apelante y Ha Lugar la reconvención presentada por el señor José Carlos Ríos Díaz (Sr. Ríos Díaz; apelado).

Por los fundamentos que expondremos a continuación, adelantamos que confirmamos el dictamen apelado.

**I**

Las partes en el caso que nos ocupa contrajeron matrimonio el 6 de diciembre de 1997 y se divorciaron mediante Sentencia emitida el 20 de noviembre de 2019 por la causal de ruptura irreparable.[1] Antes de casarse, otorgaron ante notario unas capitulaciones donde acordaron lo siguiente:

---------------------------------EXPONEN--------------------------------
---PRIMERO: Que es la intención de los comparecientes contraer matrimonio entre sí y que con motivo de dichas

---

[1] Véase, Entrada Núm. 180, Exhibit 1 en el expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC).

nupcias desean otorgar las siguientes capitulaciones matrimoniales y lo llevan a efecto según las siguientes:----------------------------CL[Á]USULAS Y CONDICIONES-----------------

----Una: Que los comparecientes desean mantener separadamente la propiedad y administración de todos sus respectivos bienes presentes y futuros.-----------------------------

---Dos: Que los comparecientes estipulan que su matrimonio no estará sujeto al régimen de la sociedad legal de bienes gananciales provista en el Código Civil de Puerto Rico, ni sus bienes presentes o futuros, excepto que se especifique contrario en esta escritura.---------------------------------------

---Tres: Asimismo, han convenido también que ambos cónyuges tendrán la libre administración de sus respectivos bienes propios y podrán disponer de ellos sin intervención, limitación ni necesidad de consentimiento alguno, pudiendo ambos realizar toda clase de operaciones sin necesidad de licencia o consentimiento alguno; y desde ahora, es también convenido y especificado que el compareciente------------------

JOSE CARLOS RIOS DIAZ, podrá ocupar toda clase de cargos, públicos o privados, dedicarse al comercio y adquirir toda clase de bienes, muebles e inmuebles, excepto los que en esta escritura se estipulen que serán gananciales, derechos reales o personales y también transferirlos, enajenarlos, hipotecarios, venderlos, traspasarlos, permutarlos o gravarlos, con los pactos y condiciones y para los fines y propósitos y por las causas y conceptos que ella determine y disponga, sin limitación alguna, excepto las que surjan de este documento, y sin necesidad de intervención, conocimiento o consentimiento de su futura esposa, la compareciente ZULMA NEREIDA VIERA.-------------------------

---Cuatro: Que la compareciente ZULMA NEREIDA VIERA, tendrá los mismos derechos respecto de sus propios bienes que su esposo respecto a los de él.---------------------------------

---Cinco: Convienen los comparecientes además, que el compareciente, JOSE CARLOS RIOS DIAZ, responderá en un cien por ciento (100%) de todos los gastos, rentas y mantenimiento del hogar conyugal y también responderá en un cien por ciento (100%) de todos los gastos, alimentación, crianza y educación de los hijos que el matrimonio procreare.-

---Seis: Convienen los comparecientes que toda clase de ingresos que tenga cada uno de ellos será privativo del cónyuge que los produzca.-------------------------------------------

---Siete: En esta etapa el compareciente JOSE CARLOS RIOS DIAZ, manifiesta que a la fecha del otorgamiento de esta escritura posee los siguientes bienes, los cuales le pertenecen privativamente:---------------------------------------

---(A) Solar en el que enclava un negocio dedicado a "Junker", localizado en la carretera ciento diecinueve (119), kilómetro veintis[é]is punto siete (26.7), barrio Hoyamala, San Sebastián, Puerto Rico.-------------------------------------------

---(B) Solar de MIL CIENTO NOVENTA Y CINCO PUNTO TREINTA Y NUEVE (1,195.39) METROS CUADRADOS, localizado en la comunidad Stella, del barrio Pueblo de Rincón.------------------------------------------------------------

---(C) Solar en el que enclava un negocio dedicado a "dealer" de automó[v]iles, localizado en la carretera ciento diecinueve (119), kilómetro veintiséis A punto siete (26.7), barrio Hoyamala, San Sebastián, Puerto Rico.----------------------------

---SEGUNDO: Los comparecientes desean que los bienes que se describen a continuación pertenezcan a la sociedad legal de gananciales, independientemente de que dichos bienes hayan sido adquiridos con fondos privativos de

> cualquiera de los comparecientes:----------------------------------
> ---(A) Pertenecerá a la sociedad legal de gananciales, cualquier casa o estructura que sea utilizada como vivienda principal de los comparecientes.---------------------------------------
> ---(B) Pertenecerá a la sociedad legal de gananciales un automó[v]il marca Cadillac, modelo mil novecientos noventa y tres (1993). -------------------------------------------------------
> ---(C) Pertenecerá a la sociedad legal de gananciales todo el mobiliario de la casa o estructura que sea utilizada como vivienda principal de la sociedad conyugal.----------------------
> ---TERCERO: En esta etapa los comparecientes hacen constar que el compareciente JOSE CARLOS RIOS DIAZ, depositará mensualmente la suma de CUATROCIENTOS DOLARES ($400.00), en la cuenta del Banco Popular de Puerto Rico número cero setenta y nueve, cero tres, veinticuatro, treinta y cinco (079032435). Dicho dinero será para cubrir los gastos personales de la compareciente ZULMA NEREIDA VIERA MALDONADO.--------------------------
> -------------------------------ACEPTACI[Ó]N----------------------------
> -----Los comparecientes aceptan esta escritura en todas sus partes por expresar correctamente lo pactado por ellos.------[2]

El 27 de diciembre de 2019, la Sra. Viera Maldonado presentó una Demanda de división de comunidad de bienes donde solicitó que el tribunal ordenara al Sr. Ríos Díaz el pago a favor de la apelante por la cantidad de $1,105,600.00 y una pensión excónyuge.[3] El Sr. Ríos Díaz contestó la Demanda y presentó una reconvención, en la cual alega que la Sra. Viera Maldonado poseía deudas que no estaban cubiertas por las capitulaciones matrimoniales y que no existió entre ellos una comunidad de bienes ni una sociedad legal de gananciales.[4]

Luego de algunos trámites procesales, el TPI desestimó sin perjuicio, mediante *Sentencia Parcial*, la acción de pensión excónyuge por hallarla dispar a la acción de liquidación de comunidad de bienes.[5] Posteriormente, se señalaron las fechas para la celebración del juicio en su fondo en cuanto a la acción de liquidación de comunidad de bienes y, luego de desfilada la prueba documental y recibidos los testimonios orales de las partes citadas a sala, el TPI emitió una decisión. En su dictamen, conforme a la prueba sometida, el tribunal expuso las siguientes determinaciones de hechos:

---

[2] Apéndice del recurso, págs. 67-71.
[3] Apéndice del recurso, págs. 1-3.
[4] Apéndice del recurso, págs. 5-6.
[5] Véase, Entrada Núm. 61 en el expediente electrónico del Sistema Unificado de Manejo y Administración de Casos (SUMAC), *Sentencia Parcial*, pág. 2.

1. En esencia las partes declararon que, según testimonio de la demandante, alegó que previo a contraer matrimonio con el demandado, las partes otorgaron una escritura de capitulaciones matrimoniales, según sus alegaciones, luego de contraído el matrimonio, el mismo se rigió como una Sociedad Legal de Bienes Gananciales.
2. La demandante testificó que hizo gestiones para el negocio del demandado tales como ir al banco a realizar depósitos e ir al Departamento de Transportación y Obras Públicas a entregar documentos.
3. La demandante reclamó el 50% de participación en la propiedad inmueble que radica en Kissimmee, Florida. Al ser contrainterrogada manifestó que no firmó escritura alguna ni hipoteca en conjunto con el demandado.
4. También reclamó deuda por los $400.00 mensuales para sus gastos personales estipulados en las capitulaciones matrimoniales a depositarse en la cuenta del Banco Popular a su nombre, número: 079-032435.
5. Testificó que dicha cuenta fue cerrada; no precisó fecha de cierre de la cuenta.
6. Reclamó el 50% de los negocios del junker y de venta de vehículos de motor y de todos los bienes muebles e inmuebles pertenecientes al demandado.
7. Declaró que no existen deudas gananciales.
8. Declaró que durante el matrimonio se dedicó a ser ama de casa y a cuidar a su hija.
9. Declaró que durante el matrimonio rindieron planillas de [contribución] sobre ingresos donde aparece su firma[,] aunque no reportó ingresos.
10. El demandado a su vez testificó que durante el matrimonio cumplió estrictamente con lo especificado en las capitulaciones matrimoniales.
11. Que el matrimonio obró con total separación de bienes.
12. Que cumplió con el depósito de los $400.00 acordados hasta que la cuenta fue cerrada por la demandante.
13. Además[,] declaró que al cierre de la cuenta por la demandante y no tener donde depositar el dinero, lo pagó en efectivo y le proveyó una tarjeta para que ésta retirara el dinero de la cuenta privativa de él.
14. Declaró que la propiedad adquirida en Kissimmee, Florida, la escritura figura a su nombre en cumplimiento de las capitulaciones matrimoniales[.]
15. Que sobre la anterior propiedad existe una hipoteca con un balance aproximado de $30,000.00.
16. Que adeuda la cantidad de $84,000.00 al CRIM, deudas de tarjetas de crédito por la cantidad de $80,000.00, la cantidad de $4,000.00 a $5,000.00 al Seguro Social y un retroactivo de la pensión alimentaria de la menor por $11,000.00.
17. En cuanto al Exhibit 1 y 2 sometido como prueba de impugnación por la parte demandante, el demandado testificó que hizo un préstamo al Banco Popular de Puerto Rico por la cantidad de $575,000.00 garantizados por su señor padre con el negocio de junker Ríos. Dicha deuda fue reducida $343,000.00. No pudo cumplir con el pago al banco dentro del término provisto, y finalmente fueron pagados por su señor padre quien es el pos[e]edor legal de los mismos.
18. Que los negocios de junker, certificado de registro y certificado de inc[or]poración de venta de autos están exclusivamente a su nombre.

19. Testificó que[,] en cuanto a la licencia de traficante de vehículos de motor ofrecida como prueba de la demandante, no opera dicho negocio desde el año 2016 y que sólo lo opera en su carácter personal.

20. A ambas partes se le requirió, por sus respectivos representantes legales, que leyeran la escritura de capitulaciones matrimoniales (exhibit 2 estipulada) donde se especifica: "serán gananciales sin importar de qué fondos (si privativos o no) fueran adquiridos: la casa o estructura que sea utilizada como vivienda principal de los comparecientes; automóvil Cadillac, año: 1993 y todo el mobiliario de la casa o estructura como vivienda principal."

21. En el párrafo tercero de la escritura de capitulaciones matrimoniales, supra, se especificó que el compareciente pagaría $400.00 mensuales a ser depositados en la cuenta #: 079-032435 del Banco Popular de Puerto Rico para cubrir los gastos personales de Zulma N. Viera Maldonado. También pagaría con sus bienes privativos la totalidad de los gastos del matrimonio.

22. Que la residencia conyugal se construyó en solar privativo del demandado.

23. Ambas partes testificaron que el auto Cadillac año 1993 no existe a la fecha de la vista.[6]

El TPI declaró No Ha Lugar la Demanda presentada; concluyó que no se derrotó la validez de las capitulaciones matrimoniales otorgadas por ambos y que estas serían las que regirían en la división final del caso.[7] Específicamente, expresó en su *Sentencia* lo siguiente:

> [F]orzoso es concluir que la demandante no probó su caso sobre la invalidez de las capitulaciones matrimoniales. Hubo ausencia de prueba en sus alegaciones. No pudo probar la ineficacia de las Capitulaciones Matrimoniales. De su propia prueba concluimos que se observó el fiel cumplimiento de las mismas durante toda la existencia del matrimonio.[8]

Además, en cuanto a la reclamación de $400 mensuales, determinó que no se trataba de una deuda líquida ni exigible a raíz de que no se pudo probar hasta qué fecha estos depósitos mensuales fueron realizados. Por tal motivo, el tribunal no contaba con la prueba necesaria para hacer una determinación sobre la cuantía.[9] De igual manera, declaró Ha Lugar la reconvención presentada por el Sr. Ríos Díaz y resolvió que la figura de accesión a la inversa alegada por la apelante no era aplicable al caso ante nuestra consideración.

---

[6] Apéndice del recurso, págs. 201-203 (citas omitidas).
[7] Apéndice del recurso, pág. 207.
[8] Apéndice del recurso, pág. 204.
[9] Apéndice del recurso, pág. 207.

Inconforme, la Sra. Viera Maldonado acude ante nosotros mediante el recurso del epígrafe y expone los siguientes señalamientos de error:

1. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO RECONOCER QUE, AUNQUE SE FIRMÓ UNA ESCRITURA DE CAPITULACIONES MATRIMONIALES ANTES DEL MATRIMONIO EN LA QUE SE ESTABLECIÓ LA POSIBILIDAD DE LA TOTAL SEPARACIÓN DE BIENES ENTRE LAS PARTES, EST[A]S ÚLTIMAS MANEJARON LA RELACIÓN ECONÓMICA DEL MATRIMONIO COMO UNA SOCIEDAD LEGAL DE GANANCIALES NORMAL POR LO QUE LAS CAPITULACIONES QUEDARON SIN EFECTO.

2. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LA DEMANDANTE NO ES ACREEDORA DE LA CANTIDAD DE $400 D[Ó]LARES MENSUALES QUE SE PACTARON EN LA ESCRITURA DE CAPITUALCIONES MATRIMONIALES.

3. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EL SOLAR DONDE SE LEVANTÓ LA ESTRUCTURA GANANCIAL, RECONOCIDA EN LAS CAPITULACIONES QUE SERÍA EL HOGAR CONYUGAL, NO ADVINO A SER PARTE DE LA SOCIEDAD LEGAL DE GANANCIALES, EN VIRTUD DE LA FIGURA DE LA ACCESIÓN A LA INVERSA.

4. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE EN EL JUICIO SE ATENDERÍAN TODAS LAS CUESTIONES DEL CASO, AUNQUE SE HUBIERA DETERMINADO INICIALMENTE, QUE LA VISTA EVIDENCIARIA SERÍA SOLO PARA DETERMINAR SI SE ENMENDARON T[Á]CITAMENTE LAS CAPITULACIONES MATRIMONIALES.

5. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL NO APLICAR A LA PARTE DEMANDADA LA PRESUNCIÓN DE QUE LA EVIDENCIA VOLUNTARIAMENTE SUPRIMIDA SERÍA CONTRARIA A LA PARTE QUE LA ANUNCIA DE ACUERDO A LA REGLA 304, INCISO 5 DE EVIDENCIA.

Con el beneficio de la comparecencia de la parte apelada, el recurso quedó perfeccionado, por lo que nos encontramos en posición de resolver.

**II**

**A**

Se ha reconocido que nuestro ordenamiento jurídico permite a todas aquellas parejas que deseen contraer matrimonio poder seleccionar el régimen económico que ha de regir en su futuro vínculo

matrimonial. *Guadalupe Solís v. González Durieux*, 172 DPR 676, 682 (2007). Es decir, los contrayentes tienen la discreción de establecer el régimen económico que entiendan es el más adecuado y conveniente para ellos. *Maldonado v. Cruz*, 161 DPR 1, 15 (2004). Sabido es que las capitulaciones matrimoniales constituyen contratos, por consiguiente, "en su preparación rige el principio de libertad de contratación". *Guadalupe Solís v. González Durieux*, *supra*, pág. 683. En consecuencia, dicho principio "reconoce la autonomía de los contratantes y permite que éstos establezcan toda clase de pactos, cláusulas y condiciones". *Id.*; Art. 1207 del Código Civil de 1930(Código Civil)[10], 31 LPRA sec. 3372. Siempre y cuando estas no vayan en contravención a "la ley, la moral, el orden público ni los fines del matrimonio"*. Id.*; *Ab Intestato Saldaña Candelario*, 126 DPR 640, 643 (1990). En cuanto a este particular, el Artículo 1269 del Código Civil, *supra*, dispone lo siguiente:

> En los contratos a que se refiere el artículo anterior no podrán los otorgantes estipular nada que fuere contrario a las leyes o a las buenas costumbres, ni depresivo de la autoridad que respectivamente corresponda en la familia a los futuros cónyuges.
>
> Toda estipulación que no se ajuste a lo preceptuado en este artículo se tendrá por nula. 31 LPRA sec. 3552.

A su vez, se tendrán "por nulas y no puestas […] las cláusulas por las que los contratantes, de una manera general, determinen que los bienes de los cónyuges se someterán a los fueros y costumbres especiales y no a las disposiciones generales de este título". Art. 1269 del Código Civil, 31 LPRA sec. 3553. El contrato de capitulaciones matrimoniales cobra importancia en cuanto a la relación patrimonial del matrimonio en la medida que este permite "regular los *derechos de los esposos sobre sus bienes respectivos*; los derechos sobre las ganancias realizadas por ellos durante su unión; […]; los intereses de los terceros que contratan con uno u otro de

---

[10] Al haberse otorgado, previo a la aprobación del Código Civil de 2020, las Capitulaciones Matrimoniales entre las partes, aplica al recurso del epígrafe ante nuestra consideración lo dispuesto en el Código Civil de 1930. De igual manera las partes se divorciaron previo a que entrara en vigor el nuevo Código Civil.

los esposos, y, en definitiva, el interés económico y social del matrimonio". *Guadalupe Solís v. González Durieux*, *supra*, pág. 683, que cita a *Maldonado v. Cruz, supra,* pág. 16.

Al amparo de la facultad de los contrayentes para poder elegir el régimen económico que regirá en su futuro matrimonio estos pueden optar entre varios regímenes, a saber: (1) la total separación de bienes; **(2) la separación de bienes, pero con una participación en las ganancias;** (3) la sociedad legal de gananciales; (4) renunciar al régimen legal de gananciales; o (5) cualquier otro régimen que combine estas posibilidades, tomando en cuenta que podrán ser de aplicación siempre que no vayan en contra de la ley, la mora o las buenas costumbres. *Guadalupe Solís v. González Durieux*, *supra,* que cita a *Maldonado v. Cruz, supra,* pág. 16. (Énfasis nuestro).

Por otra parte, el Artículo 1271 del Código Civil*,* 31 LPRA sec. 3555*,* dispone sobre las alteraciones en las capitulaciones matrimoniales. En cuanto a este particular, dispone que "[p]ara que sea válida cualquier alteración que se haga en las capitulaciones matrimoniales, deberá tener lugar antes de celebrarse el matrimonio y con la asistencia y concurso de las personas que en aquéllas intervinieron como otorgantes [,]" y "[n]o será necesario el concurso de los mismos testigos". Es decir, que posterior al matrimonio no se podrían alterar las capitulaciones previamente otorgadas, ya sea de bienes presentes o futuros. Art. 1273 del Código Civil, 31 LPRA sec. 3556. Por el término de *alteración* se entiende que "[a]lterar es cambiar, modificar en su esencia o en sus detalles o circunstancias alguna cosa o acto". *Vilariño Martínez v. Registrador*, 88 DPR 288, 293 (1963), que cita a Manresa, Comentarios al Código Civil Español, 5ta. ed., tomo IX, págs. 147 y 153*.* En cuanto a los hechos de este recurso, "si existen las capitulaciones matrimoniales, a ella han de amoldarse los cónyuges y los terceros; no cabe después del matrimonio cambio ni modificación alguna, o, lo que es lo mismo, no pueden esos cambios tener eficacia, pues las capitulaciones han de subsistir tales como fueron hechas antes del

matrimonio". *Maldonado v. Cruz, supra,* págs. 18-19; *Vilariño Martínez v. Registrador, supra*, pág. 293*.*

**B**

El Artículo 287 del Código Civil define el derecho de accesión como sigue:

> La propiedad de los bienes, ya sean muebles o inmuebles, lleva consigo el derecho por accesión, a todo lo que ellos producen, o se les une o incorpora, natural o artificialmente.
> 31 LPRA sec. 1131

Ello significa que lo accesorio sigue a lo principal, lo que es norma general firmemente establecida. En cuanto a los bienes inmuebles, las edificaciones son accesorias al suelo. Sin embargo, en nuestro ordenamiento jurídico se ha reconocido mediante jurisprudencia la figura de accesión a la inversa en el caso de *Calvo Mangas v. Aragonés Jiménez* 115 DPR 219 (1984). En el mencionado caso, nuestro más alto foro resolvió que, a manera de excepción, un solar privativo adquiere carácter ganancial cuando sobre este se construye un bien ganancial. *Id.* Para que esto sea de aplicación es necesario que se cumpla con los siguientes requisitos: "que las edificaciones sean obras independientes y principales y se construyan de nueva planta". *Calvo Mangas v. Aragonés Jiménez*, *supra*, pág. 224.

Al tratarse de una excepción a la norma esta debe interpretarse restrictivamente.

**III**

La controversia del presente caso se puede resumir en la interrogante de si las capitulaciones matrimoniales habían sido invalidadas y, por consiguiente, el régimen económico de aplicación es la sociedad legal de gananciales en la división final de bienes. Al respecto, la apelante esencialmente expone que el apelado incumplió con el pago de $400 mensuales establecido en las capitulaciones, por lo que dicho incumplimiento las dejaba sin efecto. Además, argumentó que, como resultado de lo anterior, regía la sociedad legal de gananciales. Para apoyar dicho argumento, la apelante también alegó que el matrimonio se

comportó como uno gobernado por el régimen de bienes gananciales ya que ambos hacían todo juntos y todo su patrimonio estaba unido. Atendido este asunto por el TPI, lo sustantivo de los señalamientos de error van dirigidos a la decisión tomada por el foro primario en cuanto a la validez de las capitulaciones matrimoniales otorgadas por las partes.

De manera sucinta, afirmamos que la decisión tomada por el TPI es correcta en derecho puesto que existía entre las partes un contrato de capitulaciones que ambos firmaron de manera voluntaria siguiendo las formalidades exigidas por ley. En esta, expresamente excluyeron el régimen de sociedad legal de gananciales para sus bienes presentes en aquel momento y los que se adquirieran en el futuro durante el matrimonio.[11] No obstante, en este mismo contrato realizaron un régimen mixto donde unos bienes en particular se identificaron como gananciales. Sin embargo, ello no implica que existe una sociedad legal de gananciales como régimen económico para el matrimonio, sino que se trata de que es únicamente para con los bienes que fueron catalogados como tal en la escritura de capitulaciones.

Entre los bienes convenidos como gananciales se estableció que sería únicamente cualquier estructura que haya sido utilizada como el hogar conyugal. Pero, también se estableció en la misma escritura que el solar donde eventualmente se construyó la mencionada estructura pertenecía privativamente al Sr. Ríos Díaz. Tal y como resolvió el TPI la figura de accesión a la inversa, o antiaccesión, no es de aplicación a los hechos porque ya había un acuerdo entre las partes sobre este supuesto mediante contrato suscrito entre ambos, el cual tiene fuerza de ley. Como lo establecido por las partes no va en contra de la ley, la moral ni en orden público las capitulaciones mantienen su validez.

Por otro lado, referente a las alegaciones de que el matrimonio se comportó como uno bajo la sociedad legal de gananciales, no hubo prueba clara, robusta y convincente que apoyara estos argumentos. De las propias

---

[11] Apéndice del recurso. pág. 68.

declaraciones de la apelante se desprende que las partes mantenían sus bienes separados.[12] A pesar de que la apelante se dedicó a ser ama de casa y no adquirió bienes para sí, los bienes privativos del apelado mantuvieron dicha naturaleza. Además, las alegadas funciones que la apelante llevaba a cabo en el negocio de venta de autos del apelado no demostraron ser tareas sustantivas o que aumentaran las ganancias del mencionado negocio ni el caudal del Sr. Ríos Díaz. Sino que, más bien esta realizaba diligencias ordinarias, como llevar documentos, llenar solicitudes o depositar cartas en el correo a modo de realizarle favores a su cónyuge.[13]

Por último, en cuanto al cobro de los $400 dólares mensuales, no se proveyeron estados bancarios que demostrara una ausencia en la falta de depósito, por lo que no se conocía desde cuándo estos no se realizaban.[14] Este hecho nos lleva a concluir que es imposible cuantificar la alegada deuda, por lo que la hace ilíquida y, por consiguiente, no exigible. Resolvemos que no se cometieron los errores señalados.

**IV**

Por los fundamentos antes expuestos se confirma la sentencia apelada.

Notifíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[12] Transcripción de Prueba Oral (TPO), págs. 107-110 y 113-115.
[13] TPO, págs. 148 y 201-202.
[14] TPO, págs. 96-97.